**Harry LANGERT, Plaintiff,**

v.

**Pasquale FESTA, Defendant.**

**No. 80 Civ 2875.**

United States District Court,
E.D. New York.

May 10, 1983.

Kaplan, Russin, Vecchi & Kirkwood, New York City, for plaintiff; Anthony E. Davis, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendant; Fred Kolikoff, New York City, of counsel.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff, an inmate at the Auburn Correctional Facility, has filed this action under the Civil Rights Act, 42 U.S.C. § 1983. Defendant has moved for summary judgment dismissing the complaint on the ground that the action is barred by the doctrine of collateral estoppel. For the reasons stated below, defendant's motion is granted in part.

### FACTS

On February 15, 1980, defendant, Detective Pasquale Festa, arrested Harry Langert, for raping, sodomizing and robbing Marie Murray on or about January 28, 1980. In his § 1983 complaint, Langert alleges that Detective Festa threatened him in the police car by placing a cocked gun against Langert's ribs, and urging him to cooperate or he would be "blown away". His death, it is alleged, would be explained as an attempted escape. Langert was taken to the 112th Precinct, where, having been advised of his rights, he made a confession. He was subsequently indicted for the crimes charged against him under Indictment 364–80.

Prior to trial, Langert moved to suppress his confession on the ground that it was not made voluntarily. In support of that motion, he alleged that during his interrogation at the police station he was told that he did not need a lawyer and that he could not call his wife until "after everything was completed." Langert further alleged that

at some point during the interrogation, Detective Festa placed his gun on the table before Langert and told him to cooperate and "everything would be all right." In addition, Langert alleged that he was refused medical attention for approximately ten hours, although he had informed his interrogators that he was suffering from a severe headache and blood pressure difficulties. These allegations, which formed the basis of Langert's state court suppression motion, are realleged in the instant action as the basis of his § 1983 claim.

A state court hearing was held to determine the admissibility of Langert's confession. That hearing (the transcript of which fills 380 pages) took place on March 6, 18, and 31, and April 15 and 29, 1981, and culminated in a written decision denying his motion to suppress the confession.

In reaching its conclusion that Langert's confession was given voluntarily, the court made various findings of fact, including: (1) Detective Festa did *not* threaten Langert at the time of his arrest, and (2) Detective Festa did *not* tell Langert that he did not need an attorney during his interrogation. Affidavit of Frederick Kolikoff, Exhibit H at pp. 3–4 (June 18, 1982).

Langert was subsequently tried and found guilty of, *inter alia,* rape, sodomy, and robbery. He was sentenced to serve a term of imprisonment of not less than 56½ years and not more than 113 years. Langert's appeal of his conviction is pending.

, Defendant argues that the factual allegations that are the basis of Langert's § 1983 claim have already been resolved against Langert in his state suppression hearing. More particularly, defendant asserts that the state court explicitly rejected Langert's allegations that he was threatened at the time of his arrest and that he was told that he did not need a lawyer at the time of his interrogation. Defendant further argues that Langert's remaining allegations were implicitly and necessarily rejected by the state court's finding that Langert's confession was not the product of coercion by Detective Festa.

Langert, on the other hand, contends that the state court made no specific finding on any of these allegations, but merely made a finding that Langert's confession was made voluntarily. Therefore, argues Langert, the state court left open the issue whether any of the incidents alleged in Langert's § 1983 action actually occurred. Langert contends that it is possible for his rights to have been violated even though those violations did not render his confession involuntary.

## DISCUSSION

◼ At the outset, it is helpful to distinguish the doctrine of *res judicata* (claim preclusion) from that of collateral estoppel (issue preclusion). The former applies when the plaintiff sues twice on the same claim or cause of action; the latter applies when the plaintiff brings two suits on different claims or causes of action that arose from the same transaction.

"The traditional rule of *res judicata* is that a final judgment on the merits of an action precludes the parties from relitigating issues actually raised and determined in that action, as well as issues that could have been, but were not, raised and determined in that action." *Gargiul v. Tompkins,* 704 F.2d 661, 665 (2d Cir.1983). By contrast, "[t]he traditional rule of collateral estoppel precludes a party from relitigating issues already litigated and determined adversely to him in a prior action, where the adverse determination was necessary to the judgment in that action." *Id.*

◼ While this Circuit has relaxed the traditional *res judicata* rules in Civil Rights cases by allowing subsequent litigation of constitutional claims that were not actually litigated and determined in a prior action, (*See Lombard v. Board of Education of City of New York,* 502 F.2d 631, 635–37 (2d Cir.1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975)) "the classical notion of collateral estoppel has ... survived intact and has been treated as fully applicable in Civil Rights cases." *Winters v. Lavine,* 574 F.2d 46, 57 (2d Cir.1978) (footnote and citations omitted). Thus, un-

der principles of collateral estoppel, a plaintiff is still precluded from relitigating in federal court an issue which was previously litigated and determined adversely to him in a state court, provided that the determination of that issue was necessary to the prior decision. *Id.* at 57, *citing Lombard v. Board of Education, supra,* 502 F.2d at 637.

If the effect of the prior judgment is controlled by New York law, the result is the same. The New York law of collateral estoppel has been formulated as follows:

> New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.

*Schwartz v. Public Admin. of Co. of Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969).

While the *Schwartz* case appears to add a new notion ("full and fair opportunity") in the earlier litigation to address the decisive issue), the federal courts have a similar requirement. *See Winters v. Lavine, supra,* 574 F.2d at 57 n. 11 (discussing the "decisive issue" requirement) & 58–60 n. 14 (discussing the "full and fair opportunity" requirement). Thus, the result in this action is the same whether the New York or the federal law of collateral estoppel is applied.

Plaintiff alleges that his rights under § 1983 were violated by Detective Festa's misconduct (a) when he arrested plaintiff and (b) during the interrogation of the plaintiff at the 112th Precinct. I find that only a limited claim under (b) survives a collateral estoppel analysis.

### A. LANGERT'S ARREST

 As previously noted, the state court has already determined at a suppression hearing that Festa did not threaten Langert at the time of arrest. Kolikoff Affidavit, Exhibit H at p. 3 (June 18, 1982). A final judgment on the merits of this claim was reached, in that, Langert's motion to suppress in state court was denied, and Langert was subsequently convicted of the crimes charged. *See Rodriguez v. Beame,* 423 F.Supp. 906, 908 (S.D.N.Y.1976). Moreover, the pendency of Langert's appeal does not rob the judgment of finality. *Id.* Langert's status as an "involuntary" litigant in the state action does not preclude the application of the rule of collateral estoppel against him. *See Winters v. Lavine, supra,* 574 F.2d at 58. Langert was afforded a "full and fair opportunity" in the prior proceeding to litigate the issue of alleged brutality at the time of his arrest.

 Finally, the state court's explicit factual finding (that Langert was not threatened at the time of his arrest) was necessary to the resolution of Langert's motion to suppress his confession. Thus plaintiff's claims of civil rights violations arising from the arrest are barred by collateral estoppel.

### B. LANGERT'S INTERROGATION

In his § 1983 claim, plaintiff has also alleged that, at the time of his interrogation, he was told that he did not need a lawyer, and that he could not call his wife until after he had made a statement. In addition, Langert has alleged that defendant placed his gun on the table to intimidate Langert. Defendant's Memorandum of Law in Opposition to Motion to Dismiss Complaint at p. 3.

As previously noted, however, the state court expressly found that Langert was never told that he would not need a lawyer. Kolikoff Affidavit, Exhibit H at p. 4 (June 18, 1982). Defendant also argues that the state court's determination that Langert's confession was not the product of coercion is an implicit rejection of Langert's allegation that defendant intimidated him by displaying a gun and by refusing to permit him to phone his wife.

 I agree. "[I]t is entirely possible for a court to consider and reject a particular claim presented to it without any express discussion of or allusion to that claim." *Winters v. Lavine, supra,* 574 F.2d at 61.

Moreover, the state court's rejection, albeit *sub silentio,* of these factual allegations was necessary to its determination that Langert's confession was not coerced.

Upon examination of the record, I find that plaintiff's claims of civil rights violations arising from threats made during interrogation are barred by collateral estoppel.

## C. DENIAL OF MEDICAL ATTENTION

Langert, in his *pro se* complaint, never mentioned denial of medical attention, either during or after his custodial interrogation. Nor has he sought leave to amend the complaint to include this allegation.

■ Langert's attorney, who was appointed after Langert had already filed his *pro se* complaint, has, however, raised the issue of denial of medical attention in his memorandum of law. Memorandum of Law in Opposition to Motion to Dismiss Complaint at p. 3. Accordingly, I shall deem the complaint to have been amended to include the allegations contained in Langert's memorandum of law. *Cf. LeGrand v. Evan,* 702 F.2d 415, 416 n. 3 (2d Cir.1983) (*pro se* complaint was read to include factual allegations asserted in plaintiff's accompanying memorandum of law).

At Langert's *Huntley* hearing, Detective Festa testified that he arrested Langert at approximately 8:30 P.M. on the night of February 15, 1980. Transcript of *Huntley* Hearing ("Tr.") at p. 4 (March 6, 1981). He further stated that the taping of Langert's confession concluded approximately forty-five minutes later. *Id.* at p. 97. Langert's testimony on direct examination could be construed to indicate that he first requested medical attention shortly after his arrest and before his confession, Tr. at p. 36 (April 29, 1981). Yet, on cross-examination Langert testified that his first request for medical assistance was subsequent to his confession. *Id.* at p. 68.

■ The state court made no express findings on this issue. Defendant argues, however, that a rejection of this allegation is implicit in and necessary to the state court's finding that Langert's confession was not coerced. Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Complaint at p. 4. Assuming that Langert is alleging that he requested but was refused medical attention *prior* to his confession, I agree with defendant that such an allegation was implicitly and necessarily rejected by the state court for that period of time.

■ A finding that Langert voluntarily confessed at approximately 9:15 P.M., however, does not constitute an implicit rejection of Langert's allegation that he was denied medical assistance until 4:00 A.M. Indeed, such a finding would not have been necessary to a resolution of Langert's motion to suppress his confession. Accordingly, Langert is not collaterally estopped from asserting a § 1983 claim for denial of medical attention for the period immediately following his confession until 4:00 A.M. when Langert was taken to the hospital.

For the foregoing reasons, then, defendant's motion for summary judgment is granted as to all aspects of plaintiff's complaint with the exception of his claim for denial of medical attention after the confession and before 4:00 A.M.[1]

SO ORDERED.

---

1. Given the unusual posture of this case—the claim for denial of medical attention appears not in the complaint, but in plaintiff's memorandum of law—defendant is given leave, if he be so advised, to move for summary judgment on this new claim.