873 F.2d 604
 Curtis H. OWENS, Plaintiff-Appellant,
v.
Dewitt TREDER, et ano., Commissioner of Suffolk County
Police Department, Patrick Henry, Esquire,
Individually and as District Attorney of
Suffolk County, New York,
Defendants-Appellees.
 No. 664, Docket 88-7864.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1989.
Decided April 20, 1989.
 
 Eric Berry, New York City, for plaintiff-appellant.
 Paul L. Dashefsky, Smithtown, N.Y., for defendants-appellees.
 Before OAKES, Chief Judge, FEINBERG and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Plaintiff Curtis Owens appeals a summary judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, Chief Judge, dismissing this 42 U.S.C. Sec. 1983 action in which Owens alleged that racially motivated police brutality had coerced his confession to a murder and robbery. The district court held that the appellate division's affirmance of Owens's conviction in the prior state criminal proceedings collaterally estopped Owens from relitigating in this federal civil rights action the issue of whether Owens had been beaten by the police. For the reasons set forth below, we reverse and remand.
 
 I. BACKGROUND
 
 2
 In January 1984 defendants Richard Jensen, Michael Ryan, James McReady, Gary Leonard, John Miller, and Stephen Cleary, who were detectives on the Suffolk County Police Department's Homicide Squad, participated in the arrest and interrogation of Owens on charges arising from a November 1983 robbery and murder. During the interrogation, Owens confessed to participation in the robbery and was then indicted on charges of robbery and murder in the second degree.
 
 
 3
 Later denying any connection with the crimes, Owens moved before trial to suppress his signed confession; he asserted that the confession was false and had been coerced by beatings inflicted by the detectives. At the pretrial suppression hearing, Owens testified that he had been interrogated from 5:30 p.m. on January 11, 1984, until approximately 3:00 a.m. on January 12, 1984; that the detectives had denied his requests to call an attorney; and that the defendants had coerced his confession by slapping him in the face and kicking him. Both Owens's girl friend and his fellow inmate testified that on the day after his arrest, Owens's jaw was bruised and he was limping or hopping.
 
 
 4
 In opposition the prosecution adduced evidence that Owens had not complained of injuries on the day after his arrest; that a strip search had revealed no signs of injury; that neither interviewing detective sergeant Richard Jensen nor detective Stephen Cleary personally struck Owens or observed others do so; and that Owens had not been denied an opportunity to call an attorney. At the conclusion of the suppression hearing, Suffolk County Court Judge Harry E. Seidell denied Owens's motion to suppress, stating that "there was not one scintilla of evidence that Curtis was abused, beaten, or any coercion used against him by Police authorities."
 
 
 5
 At trial, Owens renewed his assertion that his confession had been coerced by beatings, and he presented testimony equivalent to that which he had presented at the suppression hearing. However, the prosecution's case was not founded solely upon Owens's confession; its case also included (1) the testimony of a victim of the robbery who had identified Owens in a lineup; (2) the testimony of both of Owens's alleged accomplices in the robbery; (3) the testimony of a paid informant who said she had overheard Owens discuss his involvement in the robbery and shooting; and (4) the testimony of a witness who claimed that Owens had escaped from the scene of the crime by driving away in the witness's car. By general verdict, the jury convicted Owens of first degree robbery and second degree murder.
 
 
 6
 Owens appealed the judgment of conviction to the Appellate Division, Second Department, again arguing, inter alia, that the trial court had erred in denying the motion to suppress his confession because it had been coerced through the physical abuse by the interviewing detectives. When it affirmed, the appellate division made no specific finding with regard to Owens's claim that his confession had been coerced; instead it characterized the argument as one of Owens's "remaining contentions" that was "without merit." People v. Owens, 131 A.D.2d 602, 516 N.Y.S.2d 611, 611-12 (2d Dep't 1987). The New York Court of Appeals denied leave to appeal. People v. Owens, 70 N.Y.2d 876, 523 N.Y.S.2d 503, 518 N.E.2d 14 (1987).
 
 
 7
 Even before the appellate division's decision, Owens had initiated this civil rights action under 42 U.S.C. Sec. 1983, seeking damages for the beatings that he claimed had coerced his confession. Defendants moved for summary judgment on collateral estoppel grounds, arguing that, in the state court criminal action, Owens had already litigated and lost on the issue of whether police beatings had coerced his confession.
 
 
 8
 Owens acknowledged that the issue of police coercion had been litigated in the state court, but argued that collateral estoppel could not apply because there had been no final, conclusive determination of the issue either in the pretrial suppression ruling, in the jury's general verdict, or in the appellate affirmance. Although it noted that Owens's arguments against granting preclusive effect to the denial of the suppression motion and to the jury's verdict "might carry some weight", the district judge did not rest his determination on those trial level events; rather he held that collateral estoppel flowed from the affirmance by the appellate division. He therefore granted summary judgment, and this appeal followed.
 
 II. ISSUES ON APPEAL
 
 9
 Owens argues on appeal, as he did below, that he is not precluded from relitigating in this Sec. 1983 action his claim that beatings by police officers coerced his confession, because none of the state-court rulings disposed of his claim. Specifically, he contends that (1) the suppression ruling was not a final determination, but instead a preliminary evidentiary ruling which, under New York law, could have been, and indeed actually was, presented to the jury; (2) the jury's general verdict did not necessarily decide whether he had been beaten, because the jury could have convicted on the substantial other evidence in the case; and (3) a determination of whether the beatings coerced his confession was not necessary to the appellate division's affirmance.
 
 
 10
 Defendants, on the other hand, contend that the denial of Owens's motion to suppress and the subsequent appellate division affirmance of Owens's conviction, viewed either separately or combined, bar Owens's attempt to relitigate the issue of police brutality.
 
 III. DISCUSSION
 
 11
 Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding. Allen v. McCurry, 449 U.S. 90, 103-05, 101 S.Ct. 411, 419-21, 66 L.Ed.2d 308 (1980). The federal court must, however, apply the collateral estoppel rules of the state which rendered the judgment. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379-81, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985); Migra v. Warren City School District Board of Education, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (state-court judgment must be given "same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered").
 
 
 12
 In New York a party is barred from relitigating an issue if the following requirements are met: (1) the issue as to which preclusion is sought is identical to the issue decided in the prior proceeding; (2) the issue was necessarily decided in the prior proceeding; and (3) the litigant now opposing preclusion had a full and fair opportunity to litigate the issue in the prior proceeding. Capital Telephone Co. v. Pattersonville Telephone Co., 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463 (1982); Schwartz v. Public Administrator of County of Bronx, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969).
 
 
 13
 The parties do not dispute, and we agree, that the issue of whether Owens was beaten by police is identical, and that Owens had a full and fair opportunity to litigate that issue both at the trial level and in arguing his appeal to the appellate division. The only remaining requirement, then, is whether the issue was necessarily decided in the prior state proceedings. On this disputed requirement New York law provides that in order for collateral estoppel to apply, the issue sought to be precluded must have been essential to the judgment and necessarily determined in the first action. Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984); O'Connor v. G & R Packing Co., 53 N.Y.2d 278, 280-81, 440 N.Y.S.2d 920, 920-21, 423 N.E.2d 397, 398-99 (1981); Hinchey v. Sellers, 7 N.Y.2d 287, 293, 197 N.Y.S.2d 129, 133, 165 N.E.2d 156, 158 (1959). See also generally 5 J. Weinstein, H. Korn & A. Miller, New York Civil Practice (1987) p 5011.28 at 50-177 to 50-178; p 5011.29 at 50-183 to 50-184 (facts found in first litigation must have been essential to the judgment to be accorded preclusive effect). The Restatement (Second) of Judgments also requires that to have preclusive effect an issue of law or fact must be essential to the judgment:
 
 
 14
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
 
 
 15
 Restatement (Second) of Judgments Sec. 27 (1980) (emphasis added).
 
 
 16
 Because we conclude that this requirement was not satisfied by any of the prior state proceedings--the trial court's ruling on the motion to suppress, the jury's general verdict, or the appellate division's affirmance--we hold that collateral estoppel does not bar Owens's present suit. Accordingly, we reverse and remand for further proceedings.
 
 A. Suppression Hearing
 
 17
 Owens contends that because the state court's ruling on the motion to suppress, which found that Owens's confession was not coerced, was a nonfinal determination under New York law, it may not serve as a predicate for preclusion in the instant action. Relying on the opinions of three district courts within the second circuit, defendants argue that even though New York's Criminal Procedure Law explicitly allows the jury to redetermine the issue of voluntariness of a confession, the denial of a suppression motion followed by conviction is a final judgment and is entitled to preclusive effect. See Langert v. Festa, 563 F.Supp. 692, 695 (E.D.N.Y.1983); Matos v. Quealy, 524 F.Supp. 15, 17 (S.D.N.Y.1981); Rodriguez v. Beame, 423 F.Supp. 906, 908 (S.D.N.Y.1976). We conclude, contrary to these district court decisions, that under New York law a ruling denying a motion to suppress a confession, followed by a general verdict of conviction, is not, standing alone, a final determination for collateral estoppel purposes when the issue is relitigated at trial. We base this conclusion on the plain language of Sec. 710.70 of New York's Criminal Procedural Law and on its legislative history.
 
 
 18
 New York Criminal Procedure Law Sec. 710.70(3) provides that even if a motion to suppress a confession on the ground that it was made involuntarily is determined adversely to the defendant in a pretrial suppression hearing, the defendant may still relitigate the voluntariness issue before the jury, and if the defendant chooses to do so, the judge must instruct the jury to disregard the confession if it determines that it was involuntarily made. The pertinent portion of Sec. 710.70 is as follows:
 
 
 19
 Nothing contained in this article, however, precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pretrial statement made by him should be disregarded by the jury or other trier of the facts on the ground that such statement was involuntarily made within the meaning of section 60.45. Even though the issue of the admissibility of such evidence was not submitted to the court, or was determined adversely to the defendant upon motion, the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made.
 
 
 20
 New York Crim.Proc. Law Sec. 710.70(3) (McKinney 1970) (emphasis added).
 
 
 21
 Under the plain language of Sec. 710.70(3), the issue of voluntariness of a defendant's confession and thus, in the context of this case, whether beatings by detectives coerced Owens's confession, may ultimately be determined by the jury. Consequently, in New York, when a defendant relitigates the voluntariness of his confession at trial, a court's pretrial, adverse ruling on a motion to suppress the confession is a preliminary evidentiary determination only; it does not represent a final adjudication of whether beatings coerced Owens's confession and cannot be given preclusive effect. See, e.g., People v. Sutton, 122 A.D.2d 896, 505 N.Y.S.2d 937, 938-39 (2d Dep't 1986) ("defendant has an independent right to seek to convince the jury that a statement was involuntarily obtained, even if the hearing court has previously ruled that the statement is admissible as a matter of law" (citations omitted)). See also J. Friedenthal, M. Kane & A. Miller, Civil Procedure Sec. 14.9, at 659 (1985) ("court findings that are inherently provisional do not have preclusive effect even for purposes of collateral estoppel. When a ruling on a motion to suppress a confession on the ground that it was involuntary was only provisional under state law, because the issue of voluntariness ultimately had to be left to the jury in the criminal trial, that ruling would not be binding on a civil jury in an action for damages alleging mistreatment by the police officer" (citing Spencer v. Town of Westerly, 430 F.Supp. 636 (D.R.I.1977)).
 
 
 22
 Furthermore, our review of the history of Sec. 710.70(3) convinces us that neither New York's courts nor its legislature intended to confer finality upon a trial court's pretrial decision not to suppress a confession. New York law originally permitted the jury to decide the voluntariness issue whenever the trial court made a preliminary determination that the evidence on involuntariness presented a factual conflict. In Jackson v. Denno, 378 U.S. 368, 376-77, 381-82, 84 S.Ct. 1774, 1780-81, 1783, 12 L.Ed.2d 908 (1964), however, the Supreme Court held that procedure to be constitutionally flawed because it allowed the jury to determine the issue of voluntariness in the first instance, despite the danger that the jury might be improperly swayed by the reliability or truthfulness of the confession. To avoid this danger, the Supreme Court required that decisions on voluntariness must be made by the trial court alone.
 
 
 23
 In response to Jackson v. Denno, the New York Court of Appeals, in People v. Huntley, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 843, 204 N.E.2d 179, 183 (1965), adopted the so-called "Massachusetts procedure" under which the trial judge alone must first find voluntariness beyond a reasonable doubt before the confession may even be submitted to the jury, but the issue of voluntariness may thereafter again be tried to the jury. The decision to adopt this two-tiered approach to determining the voluntariness of a confession was based, in part, on the fact that art. I, Sec. 2 of the New York state constitution mandates a jury trial on the issue of voluntariness. See People v. Huntley, 15 N.Y.2d at 78, 255 N.Y.S.2d at 843, 204 N.E.2d at 183; People v. Hamlin, 71 N.Y.2d 750, 761, 530 N.Y.S.2d 74, 78, 525 N.E.2d 719, 723 (1988). The legislature subsequently codified this "second bite" procedure in Sec. 710.70(3).
 
 
 24
 We conclude that the history as well as the plain language of Sec. 710.70(3) evidence a legislative intent to make the jury rather that the trial judge the final arbiter at the trial level of the question of voluntariness of a confession. Accordingly, because the findings of the criminal court judge on the motion to suppress were in the nature of a preliminary evidentiary determination only and not a final determination, we hold that under New York law, no preclusive effect may be ascribed to a trial judge's pretrial denial of a motion to suppress a confession, standing alone, when the defendant later relitigates the issue at trial. We emphasize, however, that if the ruling denying a motion to suppress is followed by an appellate decision expressly stating that the trial court had properly admitted the confession, then the combination of the suppression ruling and the appellate affirmance would bar relitigation of a coercion issue.
 
 
 25
 We note also that of the three district court decisions reaching the opposite conclusion, only one, Rodriguez v. Beame, 423 F.Supp. 906, 908 (S.D.N.Y.1976), actually analyzed whether a decision denying a suppression motion is a final judgment for collateral estoppel purposes. The other two cases, Langert v. Festa, 563 F.Supp. 692, 695 (E.D.N.Y.1983) and Matos v. Quealy, 524 F.Supp. 15, 17 (S.D.N.Y.1981), simply followed the Rodriguez holding. But Rodriguez appears to be unsound in two respects. First, it did not analyze the effect of Sec. 710.70 on the finality of a suppression ruling. Second, it erroneously based its decision that a denial of a pretrial suppression motion is final on a second circuit decision holding that an order that grants the defendant's motion to suppress and thus precludes the jury from hearing the evidence at all, is final after acquittal. See United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262 (2d Cir.1975), cert. denied, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976). Because DiGiangiemo dealt with the collateral estoppel effect of a court ruling granting a motion to suppress, it does not establish the collateral estoppel effect of the nonfinal findings made when a motion to suppress a confession is denied and the jury is then permitted under Sec. 710.70 to redetermine the voluntariness issue.
 
 B. The Jury's General Verdict
 
 26
 The jury's general verdict convicting Owens of robbery and felony murder likewise does not bar relitigation of the voluntariness of Owens's confession.
 
 
 27
 Owens contends that, given the amount of evidence against him, the determination of whether the beatings coerced his confession was not essential to the judgment, because the jury could have reached its general verdict convicting him of robbery and second degree murder either without actually deciding the voluntariness issue, or even if they decided the issue against him. We agree. As noted above, in addition to Owens's confession, there was a large amount of other evidence of Owens's guilt, including the testimony of a government informant, Owens's accomplices, a surviving victim, and a witness who saw Owens escape.
 
 
 28
 In these circumstances, the jury could have declined to determine whether beatings coerced Owens's confession or, indeed, could have even determined that issue in Owens's favor and still convicted him on the basis of the substantial other evidence presented by the prosecution. We conclude, therefore, that although the coerced confession issue was actually litigated, its disposition was not essential to the jury's verdict, so that considering the magnitude of the prosecution's other evidence and the fact that the jury returned only a general verdict of conviction, we cannot determine whether the jury actually decided the issue. See Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984); O'Connor v. G & R Packing Co., 53 N.Y.2d 278, 280-81, 440 N.Y.S.2d 920, 920-21, 423 N.E.2d 397, 398-99 (1981); Hinchey v. Sellers, 7 N.Y.2d 287, 293, 197 N.Y.S.2d 129, 133, 165 N.E.2d 156, 158 (1959).
 
 
 29
 Consequently, the jury's general verdict does not preclude Owens from relitigating in this Sec. 1983 action the issue of whether police brutality coerced his confession.
 
 C. Appellate Division Affirmance
 
 30
 We turn finally to the affirmance by the appellate division. Had that court specifically addressed the suppression issue, we would have no problem in determining that collateral estoppel should apply. Unfortunately, however, the appellate division merely stated in relevant part as follows:
 
 
 31
 The appeal brings up for review the denial, after a hearing, of those branches, of the defendant's omnibus motion which were to suppress a statement made to the police and to suppress identification testimony. ORDERED that the judgment is affirmed.
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 We have reviewed the defendant's remaining contentions [which included the voluntariness argument] and have determined that they are without merit.
 
 
 35
 People v. Owens, 131 A.D.2d 602, 516 N.Y.S.2d 611, 611-12 (2d Dep't), app. denied, 70 N.Y.2d 876, 523 N.Y.S.2d 503, 518 N.E.2d 14 (1987).
 
 
 36
 Determining that Owens's argument for reversal was "without merit", could have meant in the context of that appeal either that the confession was properly admitted because not coerced, or that even if the confession were coerced and therefore improperly admitted, the error was harmless. New York courts have held a trial court's erroneous failure to suppress statements of a defendant to be harmless error, even when the error is of constitutional magnitude, if there is sufficient other evidence in the record of the defendant's guilt and there is no reasonable possibility that the error contributed to the defendant's conviction. People v. Crimmins, 36 N.Y.2d 230, 240-41, 367 N.Y.S.2d 213, 221, 326 N.E.2d 787, 793 (1975). See, e.g., People v. Sanders, 56 N.Y.2d 51, 66-67, 451 N.Y.S.2d 30, 37-38, 436 N.E.2d 480, 486-87 (1982) (error in failing to suppress statements taken from defendant in violation of his right to counsel and which were, therefore, "involuntary" under New York law was harmless beyond a reasonable doubt where there was overwhelming proof of defendant's guilt and no reasonable possibility that the erroneous admission contributed to defendant's conviction); People v. Nocella, 129 A.D.2d 653, 514 N.Y.S.2d 268, 268-69 (2d Dep't 1987) (although defendant's statement should have been suppressed because in violation of Miranda requirements, admission of statement was harmless error where proof of defendant's guilt was overwhelming and there was no reasonable probability that suppression would have altered the result).
 
 
 37
 That the appellate division affirmance actually rested on a finding of harmless error is a distinct possibility. Even Owens acknowledges that the prosecution's case against him was impressive. In addition to Owens's confession, the prosecution's evidence included a lineup identification, the testimony of Owens's two accomplices, the testimony of a government informant who overheard Owens discuss his role in the crime, the testimony of a surviving victim, and the testimony of a witness who testified that Owens was the person who escaped from the scene of the crime by driving off in the witness's car.
 
 
 38
 Since we cannot tell the basis for the appellate division's affirmance, and since that court did not tell us, we must conclude that defendants have failed to establish one of the crucial requirements for collateral estoppel under New York law: they have not shown that a determination of the admissibility, i.e., voluntariness, of Owens's confession was essential to the affirmance. Accordingly, the appellate affirmance does not bar relitigation of the issue of whether Owens was beaten.
 
 
 39
 We again emphasize that had the appellate division stated unambiguously that the trial court had properly admitted Owens's confession, then the combination of the suppression ruling and the appellate affirmance would have barred relitigation of the coercion issue in this Sec. 1983 action.
 
 
 40
 In refusing to give collateral estoppel effect to the appellate division's affirmance in this case, however, we follow the principle that federal district and appellate courts should not attempt to divine the unspoken intent of state courts rendering ambiguous decisions, enunciated in the Supreme Court's recent decision, Harris v. Reed, --- U.S. ----, 109 S.Ct. 1038, 1044, 103 L.Ed.2d 308 (1989). In that case the Supreme Court, under somewhat similar circumstances, held that a federal court in a habeas corpus case should not presume that an ambiguous state-court judgment rested on state procedural default grounds rather than on an alternative federal issue "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Id. 109 S.Ct. at 1043 (quoting Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985) and Michigan v. Long, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)). The underpinnings of that decision are that (1) it would not unduly interfere with state judicial decisionmaking to require the state court to state explicitly the grounds of its decision, and (2) it is more intrusive for a federal court to second-guess a state court's determination of its law than to require the state court to explicitly state the grounds for its decision. Id. 109 S.Ct. at 1044. We think these principles should apply equally in Sec. 1983 actions.
 
 
 41
 We are presented here with precisely the same kind of indecipherably ambiguous state-court decision which confronted the Supreme Court in Harris. It is ironic that, according to the defendants' attorney, the appellate division was explicitly told that a Sec. 1983 action in federal court was being held in abeyance pending the appellate division's decision, because the federal court was being asked to determine the collateral estoppel effect of the state determinations. A brief, explicit statement by the appellate division of the grounds for its decision would have made unnecessary our extensive foray into the facts of this case, our need to interpret New York criminal procedural law, our consideration of how New York's harmless error rule applies to these specific facts, and our futile attempt to divine the basis of the appellate division's decision.
 
 
 42
 We appeal to state appellate courts to recognize the dilemma facing federal courts, particularly in habeas corpus and Sec. 1983 actions, when presented with overly cryptic state-court decisions. If we do not receive the adequate guidance of a plain statement of the basis for a state-court decision, we have no alternative but, as here, under the guidance of Harris v. Reed, to refuse to speculate on the state court's intent and thereby to permit unnecessary relitigation of issues that were properly and finally, albeit silently, decided in state court.
 
 IV. CONCLUSION
 
 43
 Because under state law the suppression ruling was not, standing alone, a final decision for collateral estoppel purposes, and because neither the jury's general verdict of conviction nor the appellate division's affirmance of the conviction necessarily determined the coercion issue, New York's requirements for collateral estoppel were not met in this case. We reverse the grant of summary judgment and remand for further proceedings.
 
 FEINBERG, Circuit Judge (dissenting):
 
 44
 I disagree with the majority's conclusion that appellant can relitigate the issue of whether he was beaten by the police, and therefore, I respectfully dissent.
 
 
 45
 At the outset, it is important to put this appeal in its proper perspective. Prior to appellant's criminal conviction in May 1985 for murder and robbery, he moved to suppress oral and written statements made to the police (hereafter "confession") on the ground that the authorities coerced the confession by mistreating him. A state judge held an evidentiary hearing at which many witnesses, including appellant, testified. At the end of the hearing, which not even appellant claims in this court was less than full or fair, the judge found beyond a reasonable doubt, as the majority admits, that appellant's confession was voluntary and that "there was not one scintilla of evidence that Curtis Owens was abused, beaten or any coercion used against him by Police authorities. To the contrary, all the evidence indicates that he was treated properly at all times." At appellant's trial thereafter, he again attempted to establish his involuntariness claim to the jury, but the jury convicted him. It is true that we cannot be sure that the conviction rested on a finding that the confession was voluntary. But, it is certainly quite probable that the jury found voluntariness, especially because the trial judge, who is more likely to examine the facts concerning the alleged coercion with an objective eye, see Jackson v. Denno, 378 U.S. 368, 382 & n. 10, 84 S.Ct. 1774, 1783 & n. 10, 12 L.Ed.2d 908 (1964), could find "not one scintilla of evidence" of police brutality.
 
 
 46
 The case was then appealed to the Appellate Division, in which appellant's counsel made four arguments for overturning the conviction. Included among these was the contention that "[t]he oral and written statements obtained from appellant were coerced and obtained in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the counterpart provision of the New York State Constitution." The brief made clear that the claim was that appellant's statements were coerced by police beatings. The prosecution countered each of appellant's arguments on the merits, including the one at issue here, and as to it did not argue that even if the statements were coerced, the error was harmless.
 
 
 47
 The Appellate Division affirmed the conviction, stating its reasons for rejecting three of appellant's other arguments for a new trial. The Appellate Division then stated the following:
 
 
 48
 We have reviewed the defendant's remaining contentions, including those made in his pro se supplemental brief, and have determined that they are without merit. (emphasis added)
 
 
 49
 On this record, I cannot fathom how the majority finds that the Appellate Division is ambiguous in its rejection of appellant's coerced confession argument, which in turn, under the majority's analysis, allows appellant to litigate the issue again. Ordinarily, when a court says an argument is "without merit," that means the argument is denied on the merits. It does not mean, as the majority suggests, that the "affirmance actually rested on a finding of harmless error."
 
 
 50
 The majority avoids the plain meaning of the Appellate Division's statement by replacing the Appellate Division's phrase, "remaining contentions" (emphasized in the quotation above), with its own phrase, "argument for reversal," thereby incorrectly stating that the Appellate Division determined that "Owens's argument for reversal was 'without merit.' " See Majority Opinion at 610 (emphasis added). By this alchemy, the majority transforms a plain holding on the merits of the claimed error to a possible holding of harmless error. In fact, the Appellate Division said that appellant's "remaining contentions ... are without merit." I would not create an ambiguity where none exists, particularly when the result defies common sense. There is no persuasive reason for allowing appellant to litigate again a claim that was squarely litigated and lost in a trial court after an evidentiary hearing and as to which the trial judge, affirmed by the Appellate Division, found that "there was not one scintilla of evidence." I do not agree that New York law requires such an unfortunate result.
 
 
 51
 The majority's citation to the principle underlying Harris v. Reed, --- U.S. ----, 109 S.Ct. 1038, 1044, 103 L.Ed.2d 308 (1989) is inapposite because the statements used here are not ambiguous. This is not a case where the Appellate Division silently or ambiguously affirmed either the jury verdict or the trial court's determination that the confession was voluntary. If that were the case, I would join my colleagues in entreating the state court to clearly state the grounds for its decision. In this case, however, the state court clearly stated that it rejected all of appellant's contentions, one of which was the argument that appellant's confession was coerced. Under these circumstances, we should recognize the clarity of the state court's decision instead of manufacturing unnecessary ambiguity.
 
 
 52
 For the reasons given above, I agree with Chief Judge Platt that "the Appellate Division's affirmance unambiguously rejected the same claims advanced by plaintiff in this case," and therefore, appellant is barred from relitigating this issue in the federal courts. I respectfully dissent.