**Salvador POU, Jr., Petitioner,**

**v.**

**John P. KEANE, Respondent.**

**No. 95–CV–1489.**

United States District Court,
N.D. New York.

Aug. 11, 1997.

Salvador Pou, Jr., Corona, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, Department of Law, Albany, NY; Steven H. Schwartz, Asst. Attorney General, of counsel, for Respondent.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

### I. Introduction

On October 18, 1995, Salvador Pou, Jr. (hereinafter "petitioner"), a prisoner of the State of New York, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction which was entered on June 11, 1990. At present, the petitioner is serving an eight and one third (8⅓) to twenty-five (25) year sentence for a conviction of conspiracy in the second degree.

Initially, this matter was referred to United States Magistrate Judge Ralph W. Smith, Jr. for a Report and Recommendation (hereinafter "Report") pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4. It was then transferred to United States Magistrate Judge David R. Homer by the Order of Magistrate Judge Smith filed on April 12, 1996. Magistrate Judge Homer filed his Report on August 20, 1996, recommending that the petition be denied and dismissed. Petitioner timely filed his objections to the Report on September 6, 1996.[1] The matter is now before this Court for the adoption or rejection of the magistrate judge's recommendation. The petitioner has filed objections to the Report and the Court accordingly subjects this matter to a *de novo* review. 28 U.S.C. § 636(b)(1).

### II. Background

#### A. Facts

Petitioner's conviction for conspiracy in the second degree arises from a complex sequence of events which culminated in his arrest on the morning of October 16, 1988. On the date of his arrest, petitioner was traveling south on Route 81 near Syracuse, New York just after meeting with one Ronald Ingersoll (hereinafter "Ingersoll") who, along with the petitioner, was the subject of a drug trafficking investigation in Jefferson County. (R. 125, 313). Based upon information gathered by the New York State Police through electronic surveillance of Ingersoll's telephone conversations, the police believed that the petitioner was Ingersoll's cocaine supplier and that there was a scheduled meeting between the two to complete a drug transaction.[2] (R. 125–126). Upon the arrest of petitioner and Ingersoll, the police proceeded to search each individual's car pursuant to a search warrant. (R. 125–126). While no drugs were found in either car, the police did recover $18,000.00 in cash contained in a sandwich-sized brown paper bag from petitioner's car shortly after he was arrested. (R. 126, 387).

Subsequent to petitioner's arrest, he was advised of his *Miranda* rights both in English and in Spanish by Officer Samuel Serrano. (R. 22, 277–280). Officer Serrano asked the petitioner if he wanted to talk, but the petitioner stated that "he really didn't want to talk." (R. 283–293). Petitioner was then transported to the North Syracuse Police Station where he was fingerprinted and photographed. (R. 306) Then, after approximately four hours, the petitioner was transported to the Watertown station for further processing and arraignment. (R. 23, 284, 295, 306). It was there that the petitioner made a phone call to his wife. (R. 23, 296). While the petitioner was at the Watertown station, Officer Serrano told the petitioner that what he was involved in was serious, "like killing a cop." (R. 23, 312, 337). Petitioner thereafter indicated that he wished to tell someone in authority about his involvement. (R. 23, 308, 336).

---

1. On February 1, 1996 the petitioner filed a motion seeking the appointment of counsel, or in the alternative, a sixty (60) day extension, Dkt. No. 7. This motion was denied with respect to the appointment of counsel and was granted with respect to the extension of time. Dkt. No. 8.

2. The recordings of the telephone conversations between the petitioner and Ingersoll had been taped pursuant to an eavesdropping warrant, issued on September 29, 1988.

Pursuant to petitioner's request, Officer Serrano summoned Captain Joseph F. Loszynski in an effort to facilitate petitioner's desire to cooperate. (R. 23, 356–359). Officer Loszynski again advised petitioner of his *Miranda* rights, and petitioner indicated that he wanted to see what could be done about having the charges reduced or changed, or whatever he could do to "get himself out of what he considered [to be] serious drug charges." (R. 358). In addition, Officer Loszynski advised the petitioner that the police had "realized information relative to a wiretap and [petitioner] being on the wiretap relative to some incriminating evidence about a conspiracy." (R. 361). Furthermore, Officer Loszynski advised petitioner that any plea bargaining would have to be done by the district attorney. (R. 23, 359). Petitioner indicated that he still wished to cooperate, and proceeded to speak with Captain Loszynski, making several admissions. (R. 24, 359, 361). Petitioner then made admissions to the captain. (R. 359). At no time during these conversations were there any recording devices in use. (R. 363).

At about 6:30 p.m. on the evening of the petitioner's arrest, the District Attorney of Jefferson County arrived and spoke briefly with the petitioner at the Watertown station after the petitioner had "volunteered to give a statement." (R. 24, 314). Questioning ceased when the petitioner indicated that he wanted to speak to an attorney. (R. 24, 318).

### B. Prior State Court Proceedings

In November of 1988, a Jefferson County Grand Jury issued Indictment No. 484–88 charging petitioner with conspiracy in the second degree. (R. 5). The indictment alleged that, during the months of July, August, September, and October, 1988, petitioner conspired with others to distribute more than one-half ounce of cocaine in Jefferson County. (R. 5). The indictment further alleged that, as an overt act in furtherance of the conspiracy, petitioner transported more than one-half ounce of cocaine to Jefferson County for distribution, and "utilize[d] his telephone to further [the] conspiracy and to collect the proceeds of cocaine sales from a co-conspirator." (R. 5).

Prior to trial, petitioner moved for an order suppressing any physical evidence seized as a result of the execution of the search warrant, and any intercepted telephone conversations received as a result of an eavesdropping warrant. Petitioner also moved to have all oral statements made to Captain Loszynski suppressed at the hearing.

The application for the eavesdropping warrant was based primarily upon the affidavit of New York State Police investigator John Blumer. (R. 64–92). Officer Blumer based his probable cause for the warrant on information supplied by 3 informants, telephone toll analysis, undercover buys and physical surveillance. (R. 65–72). The eavesdropping warrant permitted various law enforcement agencies to intercept and record telephone conversations involving petitioner over Ingersoll's telephone. (R. 93–97). The warrant also provided that it would be executed in a manner designed to minimize the interception of non-relevant and privileged conversations. (R. 95).

Testimony was taken in the suppression hearing for four days and culminated in two lengthy written opinions dated January 22, 1990 and January 26, 1990 respectively. (R. 17–45). The state court judge held that the evidence obtained from the execution of the eavesdropping warrant was validly obtained; that probable cause existed to justify the issuance of the search warrant for Petitioner's car; and that petitioner's constitutional rights were "scrupulously honored" by the police and thus, his oral statements would not be suppressed. (R. 17–33). The court further found that the eavesdropping warrant complied with the minimization requirement of Article 700 of the New York Criminal Procedure Law. (R. 18).

The petitioner was tried in June of 1990. At trial, the prosecution presented testimony from numerous police officers involved in the investigation leading to the petitioner's arrest. The prosecution also introduced recordings of telephone conversations between petitioner and Ingersoll that had been taped pursuant to the eavesdropping warrant. (R. 1032). The prosecution further sought to introduce hearsay testimony through an undercover police officer, Albert Cukierski.

The court ruled that Officer Cukierski could testify regarding statements made to him by one of petitioner's co-defendants, Steven O'Keefe, concerning things within O'Keefe's own knowledge. (R. 1383–1388).

Officer Cukierski testified that he met O'Keefe in a bar on September 7, 1988 (R. 1352), and that O'Keefe told him that he could "hook [Cukierski] up with a connection in New York," and stated that this "guy" came in about every three or four months and could drop something off for Cukierski. (R. 1390). Cukierski further testified that O'Keefe told him that this guy was Puerto Rican, from New York and that he went by the name of "Sal." (R. 1390). Cukierski also indicated that he had known the guy for fifteen years and that the guy owned a limousine firm. (R. 1392).

On August 3, 1990, a jury found the petitioner guilty of conspiracy in the second degree. Petitioner, thereafter, was sentenced by Jefferson County Court Judge Lee Clary to an indeterminate term of eight (8) to twenty-five (25) years imprisonment.

Petitioner then appealed to the Appellate Division, Fourth Department. The conviction was affirmed on July 14, 1992. *See People v. Pou,* 185 A.D.2d 642, 585 N.Y.S.2d 911 (4th Dept.1992). Subsequently, the New York State Court of Appeals denied the petitioner's application for leave to appeal. *See People v. Pou,* 81 N.Y.2d 891, 597 N.Y.S.2d 953, 613 N.E.2d 985 (1993).

### III. Discussion

The petitioner raises the following arguments in his objections to the magistrate judge's Report: (1) that the trial court committed constitutional error in admitting into evidence telephone conversations between petitioner and an alleged co-defendant as well as other statements of the co-defendant; (2) that petitioner's confession was illegally obtained; (3) that the electronic surveillance warrants were illegally obtained and the police failed to properly minimize the intercepted conversations; and (4) that the police "fraudulently" used a pen register device in conducting their investigation and further that petitioner's counsel was never provided a copy of all relevant documents relating to such device.

■ With respect to petitioner's first claim, petitioner argues that the magistrate judge erred in finding his claim subject to dismissal due to his procedural default. This argument is without merit.

■ It is well settled that "a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (citing *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886) (citations omitted)); 28 U.S.C. § 2254(b) (codifying the rule). The purpose of the exhaustion doctrine is to protect the state courts' role in the enforcement of federal law and to avoid any potential intrusions into state judicial proceedings. *See Coleman* 501 U.S. at 731, 111 S.Ct. at 2554. On this point, *Coleman* instructs that federal district courts should not address the claims of state prisoners in habeas corpus actions where the prisoner has failed to meet a state procedural requirement. *Id.* at 729–730, 111 S.Ct. at 2553–54. Therefore, where the last state court rendering a judgment in a particular case holds that a criminal defendant's assertion of error under the federal constitution is barred by a procedural default under state law, federal habeas corpus review of such assertion is barred unless that defendant can show cause for the failure to comply with the state procedural requirements and actual prejudice from the asserted constitutional violation. *See id.* at 729–730, 111 S.Ct. at 2553–54; *Phillips v. Smith,* 717 F.2d 44, 47 (2d Cir.), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1287, 79 L.Ed.2d 689 (1984).

■ Because federal habeas relief is ordinarily unavailable unless both cause and prejudice is demonstrated; if a petitioner cannot establish a cause for a procedural default, the court need not decide whether the petitioner suffered actual prejudice from such a default. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). Additionally, it is well established that "defense counsel may not make a tactical decision to forgo a procedural

opportunity ... and then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court." *Reed v. Ross,* 468 U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). "Procedural defaults of this nature are, therefore, 'inexcusable,' and cannot qualify as 'cause' for purposes of federal habeas corpus review." *Id.* (quoting *Estelle v. Williams,* 425 U.S. 501, 513, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976)). Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986).

■ The magistrate judge correctly noted that for a federal court to deny habeas corpus review, the state court judgment relied on by the federal court must " 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (quoting *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)); *see also Owens v. Treder,* 873 F.2d 604, 611 (2d Cir. 1989). Without a "plain statement" by the last state court, federal courts are not permitted to presume or infer that a state court judgment rested on a procedural default. *See Harris,* 489 U.S. at 263, 109 S.Ct. at 1043. The rationale behind the "plain statement rule" is that it would be "more intrusive for a federal court to second-guess a state court's determination of its law than to require the state court to explicitly state the grounds for its decision." *Owens* 873 F.2d at 611.

■ In the present matter, the last state court judgment rendered is located in the memorandum opinion of the Appellate Division. *People v. Pou,* 185 A.D.2d 642, 585 N.Y.S.2d 911. There, the Appellate Division held that because the petitioner did not ob-

ject to the admission of the statements on the ground he now claims, he failed to preserve the issue for appellate review.[3] *Id.* at 643, 585 N.Y.S.2d at 912. To establish cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. The petitioner has not at any time fulfilled this part of the two-part test. In addition, no cause for petitioner's procedural default appears anywhere in the record. Therefore, the magistrate judge was correct in finding the question of prejudice need not be reached. *Stepney,* 760 F.2d at 45. This procedural default, on the part of petitioner, has the effect of barring habeas corpus review of the petitioner's assertions of error under the federal constitution.

In his objections to the Report, the petitioner relies heavily on the following statement by the Supreme Court in *Murray:,* 477 U.S. 478, 106 S.Ct. 2639 "in an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U.S. at 496, 106 S.Ct. at 2649; Dkt. 12. This argument is unavailing since this is not an "extraordinary case" as envisioned by the Court in *Murray.* There is no indication by the petitioner that any alleged constitutional violation has probably resulted in the conviction of one who is "actually innocent." *Id.* In fact, the only proof offered by the petitioner of his innocence is a broad conclusory statement claiming his innocence, coupled with statements that he had no prior criminal record and that his attorney argued his client's innocence at trial. Dkt. 12. This clearly does not amount to a colorable showing of actual innocence.

---

**3.** New York law requires that an objection be made at trial in order to preserve a question of law for appellate review. N.Y.Crim. Proc. Law § 470.05(2) (McKinney 1994). More particularly, a party claiming error must object "at the time of such ruling or instruction or at a subsequent time when the court had an opportunity of

effectively changing the same." *Id.* Petitioner's procedural default is clear notwithstanding his argument that the issue was raised in a post-conviction motion. Such a motion clearly did not preserve the issue, since the court could not have changed its ruling that time. *Id.*

The petitioner also contends that the cause and prejudice standard should not be applied in his case and that a refusal to consider his claim due to his procedural default would result in a fundamental miscarriage of justice. Dkt. 12. The petitioner, however, offers no basis to support a claim of cause, prejudice, or a miscarriage of justice. It is enough to note that the record in this case provides overwhelming evidence supporting petitioner's guilt.

Accordingly, petitioner's first ground for relief was properly dismissed by the magistrate judge.

■ Petitioner's next argument for habeas relief concerns the statements he made to the police while in custody. Petitioner argues that these statements were involuntary and therefore should not have been admitted at his trial.

■ Pursuant to 28 U.S.C. § 2254(e)(1), all factual determinations by state courts are presumed to be correct unless the petitioner for a writ of habeas corpus rebuts this presumption by clear and convincing evidence. This does not end the inquiry, however, as the magistrate judge noted, the ultimate question of whether a confession was voluntary or involuntary, "is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). Thus, a state court determination that the confession was voluntary is not binding in federal habeas corpus proceedings. *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764–66, 16 L.Ed.2d 895 (1966).

■ In determining whether a confession was voluntary, the Court must consider the "totality of the circumstances" under which the statement was taken. As Judge Cardamone well stated in *Green v. Scully*, 850 F.2d 894 (2d Cir.), *cert. denied*, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988):

> There are not two rules—standing as twin lighthouses—to guide a reviewing court safely to harbor in determining whether a confession is voluntary. There is only one guide—the totality of the circumstances rule. No single criterion controls whether an accused's confession is voluntary:

> whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.

*Id.* at 901 (citations omitted). In applying the totality of the circumstances test, the pertinent factors which merit consideration are "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of the law enforcement officials." *Green*, 850 F.2d at 901–902. In addition, "[s]o long as the characteristics of the suspect and the conduct of the law enforcement officials do not otherwise suggest that the suspect could not freely and independently decide whether to cooperate or remain silent, a confession made pursuant to a cooperation agreement is not the product of coercion." *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir.1987).

Following the suppression hearing, the state court made the following findings of fact: (1) that petitioner, immediately following his arrest, was advised of his *Miranda* rights, both in English and in Spanish, by Trooper Samuel Serrano, (R. 22, 277–280); (2) that for a period of approximately six hours, police refrained from questioning petitioner, (R. 22); (3) that petitioner indicated that he wished to tell someone in authority about his involvement, thereby initiating his conversation with Captain Loszynski, (R. 22–23, 308, 336); (4) that Captain Loszynski informed petitioner a second time of his *Miranda* rights prior to their conversation, (R. 23); and (5) that even after Captain Loszynski informed petitioner that he did not have the authority to make a deal and "that any plea bargaining would have to be done by the district attorney," petitioner still indicated that he wished to cooperate, (R. 23, 24, 359). Petitioner has come forward with no evidence to refute these factual findings and they are, accordingly, presumed to be correct.

In reviewing the entire record, including the transcripts of the suppression hearing and the trial, there is nothing in the record to support a finding that the petitioner could not make a knowing and intelligent waiver of his constitutional rights. In fact, the record supports a finding that the petitioner was of

a sound mind to make the decisions he did, based on his own free will. Furthermore, petitioner's experience and background do not suggest that his will was susceptible to being overborne. He had the sophistication to run a limousine business and was knowledgeable about the criminal justice system as demonstrated by his expressed desire to become a law enforcement officer. Just because he decided to cooperate in an effort to, in his own words, "get himself out of what he considered [to be] serious drug charges," this alone does not suffice to render his confession involuntary. (R. 358).

Looking to the conditions of the interrogation, it is clear that the state court findings in this area are conclusive because they are fairly supported in the record. *Miller,* 474 U.S. at 117, 106 S.Ct. at 453. Moreover, the interrogation procedure was not conducted in a coercive manner. The record illustrates that the petitioner was in custody for approximately six hours. (R. 22). Much of this time consisted of the police refraining from asking him questions about the crime. In fact, the petitioner had occasion to engage in personal conversations with one of the officers, indicating how he had planned on becoming an officer himself one day and how his son was being christened. Furthermore, the petitioner was neither threatened with force nor physically punished at any time he was in the custody of the police.

Still, however, the petitioner contends that his confession should be construed as involuntary due to the "provocation of police conduct in violation ˉof his constitutional rights." Objections at 6. The principle thrust of petitioner's argument revolves around statements made by Trooper Serrano which petitioner argues induced him to speak to Captain Loszynski. Although the record establishes that Trooper Serrano did tell petitioner that what he was involved in "was serious, like killing a cop," this is not determinative. (R. 23, 312, 337). In other words, there is nothing in the record to indicate that Trooper Serrano should have known that the statement he made to petitioner was "reasonably likely to elicit an incriminating response from him." *Rhode Island v. Innis,* 446 U.S. 291, 303, 100 S.Ct.

1682, 1691, 64 L.Ed.2d 297 (1980). Consequently, this statement cannot be considered "interrogation," and as such, it cannot have the effect of rendering the petitioner's confession involuntary. *Id.* at 301–302, 100 S.Ct. at 1689. Therefore, petitioner's second objection to the Report is properly dismissed.

■■■ In his third objection to the Report petitioner does not contest that a state court hearing was held to address the constitutionality of the acquisition and execution of the eavesdropping warrant. Instead, the petitioner contends that he did not received a full and fair opportunity to address his claims. Objections at 9.

Initially, the Court notes that it is in agreement with the magistrate judge that the petitioner is barred from raising any claims with respect to the acquisition of the warrant due to his failure to establish cause for his default and prejudice resulting from his failure to raise the issue on direct appeal. *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565.

■■■ Next, the Court turns to the exhausted portion of the claim which concerns the execution of the eavesdropping warrant. Petitioner contends that he did not receive a full and fair opportunity to address this claim at the state court level and thus he is entitled to a hearing here. The Court concurs with the magistrate judge that this claim is also not subject to review because the state afforded the petitioner with a forum to address this claim there is no evidence that there was a breakdown in the hearing process. *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (en banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). In the present case the petitioner was afforded a suppression hearing on this very issue which entailed four days of testimony. (R. 17–45). Also, the state court judge rendered a written opinion which clearly stated his conclusions of law and findings of fact. (R. 17–45). Plainly, petitioner has failed to demonstrate and the record similarly fails to suggest how petitioner's hearing on this issue was not constitutionally adequate. Accordingly, this claim is also properly dismissed.

Petitioner's final objection urges that the police engaged in the warrantless use of a pen register device and that his counsel was never provided with a copy of the application and warrant authorizing the use of such device. It must be recognized, however, that petitioner's phone number was obtained not through the use of a pen register, but rather, from a review of toll records of Ingersoll's telephone. (R. 77). Also, the magistrate judge was correct in stating that the petitioner has offered no evidence to support his conclusory allegations that the police engaged in the warrantless use of a pen register against him. The state-court record in this case simply does not lend any support to the petitioner's contentions.

As to the petitioner's claim that he was never provided with a copy of all relevant documents relating to the use of a "pen register device" has been raised as a violation of state law. As such, it is beyond the scope of this court's review. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

The petitioner also claims that Judge Clary's decision to deny relief to the petitioner is not fairly supported by the record, and that he possesses the requisite standing to challenge the evidence obtained from the alleged pen register on the telephone of co-defendant Ingersoll. Again, however, the magistrate judge is correct in pointing out that the petitioner lacks standing to challenge the evidence from the alleged pen register. There is no evidence in the record which establishes that any conversation involving the petitioner could be or was overheard on the pen register. Accordingly, petitioner's claim that the police used a warrantless pen register against him in violation of his constitutional rights is without merit.

*IV. Conclusion*

For the foregoing reasons, it is hereby

ORDERED that the Report is APPROVED and ADOPTED in its entirety; and it is further

ORDERED that the petition for a writ of habeas corpus is DENIED and DISMISSED in its entirety; and it is further

ORDERED that the clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.