**Edward MACKENZIE, Petitioner,**

**v.**

**Leonard A. PORTUONDO, Warden, Shawangunk Correctional Facility, and the State of New York, Respondents.**

**Nos. 99–CV–4659 ADS, 99–CV–4660, 99–CV–4661.**

United States District Court, E.D. New York.

May 20, 2002.

**308**

Edward Mackenzie, Wallkill, NY, Petitioner pro se.

Denis Dillon, District Attorney of Nassau County, by Tammy J. Smiley and Bruce E. Whitney, Asst. District Attorneys, Mineola, NY, Attorneys for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Edward MacKenzie ("Petitioner") seeks a writ of habeas corpus with regard to his 1994 conviction in Nassau County Court for Kidnapping in the Second Degree (N.Y. Penal Law § 135.20), two counts of Robbery in the Third Degree (N.Y. Penal Law § 160.05), and Unauthorized Use of a Motor Vehicle in the First Degree (N.Y. Penal Law § 165.08).

In the afternoon of August 5, 1992, Trisha Krajci walked from her job at Service Merchandise on Hempstead Turnpike, East Meadow, to her car, which she parked in a lot adjacent to the store. Ms. Krajci was on her way to Price Club to buy diapers for her infant son. She entered her vehicle and sat in the driver's seat for a moment while searching through her purse to locate her Price Club shopper's card. After Ms. Krajci started the engine, the Petitioner opened the driver's side door and pushed his way into the car. Ms. Krajci repeatedly told him to get out. The Petitioner claimed to have a gun and told her he would kill her if she continued to resist. He demanded that she move over to the passenger's seat. Ms. Kracji cried and pleaded with the Petitioner to release her and take the car. She told him that she had an infant son and that her husband was a police officer. The Petitioner yelled at Ms. Kracji, "shut up, I have a gun, I'll fucking kill you." The Petitioner took the driver's seat, forced Ms. Krajci to lay on the floor, and drove away.

Eventually the Petitioner allowed Ms. Krajci to sit upright in the passenger's seat, and she observed they were traveling on the Southern State Parkway. The Petitioner then forced Ms. Krajci to turn over her bank card and personal identification number. He drove to a Dime Savings Bank ATM machine in North Bellmore,

and withdrew three hundred dollars ($300.00) from her account.

After obtaining money from Ms. Krajci's bank account, the Petitioner drove into Manhattan. He demanded that Ms. Krajci lie down on the seat again, and this time forced her to remove her shoes. At some point, he stopped the car, got out, and demanded that Ms. Krajci remain in the car. He locked the doors, took the keys with him, reminded Ms. Krajci that he had a gun, and told her he would be able to see her if she tried to escape. When the Petitioner returned, Ms. Krajci saw that two brown paper bags and two cans of beer. He threw one of the cans at her and ordered her to open it. He drank the beer while he drove. The Petitioner took a glass vial from one of the brown bags, and used a pen from Ms. Krajci's purse to smoke the vial's contents.

After driving around for approximately fifteen minutes, the Petitioner stopped the car again. He called out to several men standing in the street and asked them where he could buy drugs. Two men entered the back seat of the car and spoke with the Petitioner for several minutes about where he could purchase drugs. The Petitioner gave money to one man, who returned shortly, having been unable to buy anything.

The Petitioner resumed driving around the area, hit another car, but did not stop. Next, Petitioner parked Ms. Krajci's car in a public garage near Times Square. The Petitioner forced Ms. Krajci out of the car and into the street, walking behind her toward the corner of 8th Avenue and 42nd Street. Three uniformed New York City Police Officers who were standing on that corner, reported that, at approximately 4:45 p.m., Ms. Krajci frantically ran up to them. She was crying hysterically and grabbed one of the officer's by the arm, yelling, "that man over there, he took me, he said he's going to kill me. He has a gun." When the officers asked Ms. Krajci to point out her abductor, she pointed to Petitioner, who was standing approximately five to ten feet away, stating, "that white man with the black shirt and blue jeans. He said he has a gun. If I tell anybody he's going to kill me."

Two of the officers, Philip Repaci and James Fogarty, approached the Petitioner and asked him to stand with his hands against a nearby wall. Officer Repaci removed a crack pipe from the Petitioner's left hand. His pat-down search revealed that the Petitioner carried 69 vials of crack, four decks of heroin and two shotgun shells in his pocket. After discovering these items, Officer Repaci told the Petitioner he was under arrest, and handcuffed one of his hands. Before Officer Repaci could restrain the Petitioner's other hand, the Petitioner swung around, hit Officer Repaci with the dangling cuff, and attempted to flee. Officer Fogarty and several back-up police officers struggled with the Petitioner and eventually subdued him.

The Petitioner was taken to Roosevelt Hospital for injuries he sustained while resisting arrest. New York City Detective Robert Fleming entered the Petitioner's hospital room and read the *Miranda* rights to him. The Petitioner indicated that he understood his rights, and he was willing to speak with the detective. The Petitioner identified himself as Robert Burns, and claimed to have met Ms. Krajci at a night club several week earlier and got together with her at a Burger King restaurant a few days before this incident. The Petitioner claimed that Ms. Krajci consented to the entire day. The Petitioner stated that he and Ms. Kracji met in Foodtown that afternoon, and she agreed to drive him into Manhattan to purchase drugs. He claimed that Ms. Kracji withdrew money from a bank. The Petitioner also admitted that he purchased sixty vials

of crack for $180 and smoked several vials while driving around Manhattan.

Later that evening, Nassau County Detective John Kouril attempted to question the Petitioner. Detective Kouril entered the Petitioner's hospital room, introduced himself, and told the Petitioner he was investigating a kidnapping. He read the *Miranda* warnings to the Petitioner and asked him if he understood his rights. The Petitioner did not respond. Detective Kouril asked the Petitioner if he would sign the rights card and answer questions without consulting an attorney. The Petitioner refused, and told Detective Kouril twice to "get out [his] fuckin' face." Detective Kouril told the Petitioner that he would return for him, and the Petitioner responded, "I took her from Nassau. The New York City Police arrested me. Fuck you. You lose. You can't take me back."

On March 23, 25, and 26, 1993, the court held a suppression hearing and determined that the Petitioner's statements to Detective Kouril were admissible at trial. *See* Order dated May 26, 1993, of Supreme Court, Nassau County (Goodman, J.) at 1–5.

On January 14, 1994, the Petitioner's jury trial began in Supreme Court, Nassau County (Goodman, J.). The Petitioner represented himself throughout the trial. The jury convicted the Petitioner of Kidnapping in the Second Degree, Robbery in the Third Degree, and Unauthorized Use of a Motor Vehicle in the First Degree. On March 16, 1994, Justice Goodman sentenced the Petitioner, as a persistent felony offender, to four concurrent indeterminate terms of twenty-five years to life.

The Petitioner directly appealed his conviction to the Appellate Division, Second Department, alleging ten points of error: (1) the trial court erred in denying the Petitioner's motion for dismissal of the indictment; (2) the Petitioner's conviction should be vacated because he was forced to testify before the Grand Jury wearing his prison uniform; (3) the prosecution failed to provide race-neutral reasons for its *Batson* challenges; (4) the prosecution failed to disclose *Rosario* material at the suppression hearing; (5) the trial court erred in admitting evidence of the crack vials and heroin decks; (6) the trial court's denial of the Petitioner's motion for a bill of particulars prevented him from preparing a defense and deprived him of a fair trial; (7) the trial court erred in not applying the "merger doctrine" to dismiss the Kidnapping charge; (8) the trial court erred in admitting the Petitioner's statement; (9) the verdict was against the weight of the evidence; and (10) the Petitioner's sentence was harsh and excessive.

On September 30, 1996, the Appellate Division, Second Department remitted the matter to the trial court for a hearing on the Petitioner's speedy trial and *Batson* claims. *See People v. Mackenzie*, 231 A.D.2d 740, 741, 647 N.Y.S.2d 825 (2d Dept.1996). After a hearing in Supreme Court, Nassau County, **Justice** Goodman found that the Petitioner's speedy trial rights had not been violated, nor had the prosecutor used his peremptory challenges based on race. *See* Order dated December 4, 1996, of Supreme Court, Nassau County (Goodman, J.) at 1–3.

On September 29, 1997, the Appellate Division, Second Department, affirmed the Petitioner's conviction, finding that the record supported the trial court's determination that a *Batson* violation had not occurred; that the trial court properly denied Petitioner's motion to dismiss the indictment on speedy trial grounds; and that the remaining issues were without merit. *See People v. MacKenzie*, 242 A.D.2d 739, 740, 664 N.Y.S.2d 947 (2d. Dept.1997). On June 2, 1998, the Court of Appeals denied leave to appeal. *See*

*People v. Mackenzie,* 92 N.Y.2d 855, 677 N.Y.S.2d 86, 699 N.E.2d 446 (1998).

On December 22, 1998, the Petitioner moved to vacate the judgment of conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(h), alleging that he was mentally incompetent to stand trial; that the trial court erred in not ordering a psychiatric evaluation of the Petitioner; and requesting a competency hearing in response to his motion.

By order dated March 8, 1999, the County Court, Nassau County (Kowtna, J.) denied the Petitioner's motion to vacate without opinion. The Petitioner sought to renew and reargue his motion to vacate the conviction in County Court, and also sought leave to appeal Judge Kowtna's decision from the Appellate Division. On May 20, 1999, the Appellate Division, Second Department, denied leave to appeal. On August 5, 1999, the Appellate Division denied the Petitioner's motion to reargue his motion to vacate the conviction.

On July 28, 1999, the Petitioner filed three actions for writ of *habeas corpus,* pursuant to 28 U.S.C. § 2254. It is unclear why the Petitioner simultaneously filed three separate actions, rather than consolidating his arguments into one petition, especially since many of his allegations overlap. For judicial economy, the Court will address the Petitioner's three pending actions in this decision.

In his applications, the Petitioner argues the following grounds: (1) that he was denied due process during the grand jury proceedings; (2) that the indictment was insufficient and the trial court erred in denying his motion for a bill of particulars; (3) that his speedy trial rights were denied; (4) that the prosecution withheld *Rosario* material; (5) that the prosecutor used his peremptory challenges in a racially discriminatory manner in violation of the Petitioner's *Batson* rights; (6) that the trial court erred in its jury instruction by

excluding a "prior crimes" charge and by giving a misleading "burden of proof" instruction on Robbery in the Third Degree; (7) that appellate counsel was ineffective for failing to raise a mental incapacity claim and for initially refusing to represent the Petitioner at a post-trial hearing; and his second appellate counsel was ineffective because she allegedly did not know anything about his case; (8) that his sentence is excessive; (9) that the prosecution withheld evidence in violation of the Petitioner's *Brady* rights; (10) that the trial court erred in not applying the "merger doctrine" to dismiss the Kidnapping charge; (11) that the trial court erred in not dismissing the Unauthorized use of a Motor Vehicle charge as a lesser included offense of Robbery; (12) that the verdict was against the weight of the evidence; (13) that the Petitioner's statement to Detective Kouril was obtained in violation of his *Miranda* rights; (14) that the Petitioner's conviction was obtained in violation of his due process rights because he was mentally incapacitated during trial; (15) that the Petitioner is innocent; (16) that prosecution and "appellate level officials" committed felony offenses at the trial and appellate level, thus the Petitioner's conviction was obtained in violation of his constitutional rights; (17) that certain laws are unconstitutional.

## DISCUSSION

The Petitioner filed this action after the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to the Petitioner's case. *See Williams v. Taylor,* 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Under the provisions of Section 2254(d), a habeas corpus application must be denied unless the state court's adjudication

of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A decision is "contrary to" established Federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001); citing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.*

### A. As to exhaustion

A petitioner seeking *habeas* relief under Section 2254 is required to first exhaust his claims through the state courts. *See* 28 U.S.C. § 2254(b)(1); *see also Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir.2001). This procedure is intended to give state courts the first opportunity to correct errors of constitutional magnitude. *See Rose v. Lundy*, 455 U.S. 509, 515–16, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). To satisfy the AEDPA's exhaustion requirements, a petitioner must have presented the substance of the same federal constitutional claims in his *habeas* petition to the highest state court. *See Aparicio*, 269 F.3d at 89–90. "In order to have fairly presented his federal claim to the state courts, the petitioner must have informed the state court of both the factual and legal premises of the claim he asserts in federal court." *See Daye v. Attorney Gen'l*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Where "'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *See Aparicio*, 269 F.3d at 90 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The Court will not review the merits of a procedurally defaulted claim unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom; and (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994).

Here, many of the issues raised in the petitions and reply were not presented to the New York State Courts. Petitioner did not raise claims 6 (jury instructions), 7 (ineffective assistance of appellate counsel), 9 (*Brady*), 11 (dismissal of Unauthorized use of a Motor Vehicle charge as lesser included offense of Robbery), 13 (*Miranda*), 15 (actual innocence), 16 (felonies committed by prosecution and other officials), and 17 (constitutionality of procedural laws) on direct appeal to the Second Department or in his § 440 motion. Accordingly, the Petitioner has failed to exhaust state remedies with respect to claims 6, 7, 9, 13, 15, 16, and 17.

Under New York law, the Petitioner is not entitled to seek review from the state courts on any of these claims. *See* 22 N.Y.C.R.R. § 500.10(a) (failing to raise issues before Court of Appeals precludes

further review because the Petitioner has already made the one application for leave to appeal to which he is entitled); N.Y.Crim. Proc. Law § 440.10 (barring collateral review if claim could have been raised on direct appeal or in prior 440 motion but was not); *see also Bossett,* 41 F.3d at 829.

Moreover, the Petitioner has not alleged any cause for the default in presenting those claims to the state courts; notably, the Petitioner's ineffective assistance of appellate counsel claim does not include failure to raise any of those issues. The Petitioner does not otherwise attempt to explain why he failed to argue those issues to the state courts. Accordingly, this Court finds that those issues have not been preserved for appeal here, and deems claims 6, 7, 9, 11, 13, 15, 16, and 17 to be procedurally defaulted.

█ Although the Petitioner's claims are unexhausted and procedurally barred, the Second Circuit recently held that where a petitioner is clearly not entitled to *habeas* relief, the Court may address unexhausted claims on the merits so as not to waste further state or federal resources. *See Jones v. Senkowski,* 2002 WL 246451 at *3 (2d Cir. Oct. 5, 2001). "Where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile," the Court may address the merits of an unexhausted claim. *See Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000). The standard is that the Court may dismiss an unexhausted claim on the merits if it is obvious that the claim is not one upon which habeas relief may be granted. *See Jones,* 2002 WL 246451 at *4. Because the Petitioner is clearly not entitled to *habeas* relief on any of the grounds he asserts in his petition, the Court will address each issue, including those that are unexhausted, on the merits herein.

## B. As to the Grand Jury claims

Petitioner alleges that various defects in the grand jury proceeding, including that he was not given adequate notice of the proceeding and forced to wear his prison clothes, caused him prejudice and deprived him of a fair trial.

█ A petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error by confirming that the state had probable cause to indict the Petitioner and that he was actually guilty beyond a reasonable doubt. *See United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 941, 89 L.Ed.2d 50 (1986). Thus, constitutional challenges to state grand jury proceedings are not cognizable for federal *habeas* review. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir. 1989); *see also Velez v. People of New York,* 941 F.Supp. 300, 315–16 (E.D.N.Y. 1996). Accordingly, this claim is dismissed.

## C. As to the Sufficiency of the Indictment

█ Petitioner contends that the indictment did not give him fair notice of the nature of the charges against him, and that the trial court erred in denying his motion for a bill of particulars.

█ Generally, a claim of an insufficient state indictment is not reviewable by a federal *habeas* court unless the indictment falls below basic constitutional standards. *See Beverly v. Walker,* 899 F.Supp. 900, 908 (N.D.N.Y.1995) (citing *Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd* 880 F.2d 1318 (2d Cir.1989)). An indictment is satisfactory when it defines a crime (1) " 'with sufficient precision to inform the defendant of the charges he must meet' " and (2) " 'with enough detail that he may plead double jeopardy in a future prosecution based on the same set

of events.'" *DeVonish v. Keane,* 19 F.3d 107, 108 (2d Cir.1994) (quoting *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992)). An indictment that states the time, place and essential elements of the alleged offense will meet constitutional standards. *See Beverly,* 899 F.Supp. at 909.

Applying those standards, the Court finds the indictment in the instant case passes constitutional muster. Each count of the indictment specifies the time and place where the alleged crimes occurred and sets forth the essential elements of those crimes. The indictment sufficiently informed the Petitioner of the charges against him. *See Carroll,* 695 F.Supp. at 1438–39. Further, the prosecution provided the Petitioner with the grand jury transcript and voluntary disclosure forms. Thus, the Petitioner was adequately informed of the charged crimes. Accordingly, this claim is dismissed.

**D. As to the Speedy Trial claim**

Petitioner alleges that because approximately 17 months elapsed from the date the State filed the complaint, August 6, 1992, to the date trial commenced, January 14, 1994, his speedy trial rights were violated.

The right to a speedy trial is guaranteed by the Sixth Amendment, and imposed upon the states through the Due Process Clause of the Fourteenth Amendment. *See Rayborn v. Scully,* 858 F.2d 84, 88 (2d Cir.1988), cert. denied, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989). The four factors to determine whether the Petitioner's speedy trial rights have been violated are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice resulting from the delay. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Under the AEDPA, the Court must presume that factual findings by the state court are correct and the Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See Boyette,* 246 F.3d at 88 (citing 28 U.S.C. § 2254(e)(1)). The trial court conducted a hearing and determined that the Petitioner's speedy trial claim had no merit, and the Appellate Division affirmed this decision. *See People v. MacKenzie,* 242 A.D.2d 739, 740, 664 N.Y.S.2d 947 (2d. Dept.1997). Specifically, the court found

that at most, 125 days may be attributable to the People.

The periods from October 19 to October 21, 1992, March 18 to March 23, 1993 and March 26 to May 25, 1993, totaling 66 days, were delays occasioned by Court congestion or scheduling. For certain periods from February 1 to February 10, 1993 and February 23 to March 5, 1993, totaling 19 days, the record is unclear as to the reasons for the adjournments. Contrary to [the Petitioner's] position, [the Petitioner] was incarcerated in Nassau County from January 14 to April 21, 1993 (*see,* People's Exhibit 26). Accordingly, none of the delays during that time frame are includable time for that reason. Thirteen days from March 5 to March 18, 1993, are attributable to the People because the wrong witness was subpoenaed for [the Petitioner's] hearing. Finally, included in this calculation are the 27 days conceded by the People.

All of the remaining delays were occasioned by the defense for motions, including an Article 78 proceeding, or adjournments on consent and as such may not be used in computing the time within which the People must be ready for trial. [N.Y. Penal Law § 30.30(4) ].

Therefore, [the Petitioner] was not denied his statutory right to a speedy trial. Order dated December 4, 1996, of Supreme Court, Nassau County (Goodman, J.) at 2–3.

These factual findings are entitled to a presumption of correctness by this Court. The Petitioner has not met his burden of overcoming this presumption by clear and convincing evidence; that is, he has not demonstrated that the length of the delay was unreasonable or attributable to the prosecution.

Further, the Petitioner has not shown that any delay caused him prejudice, the factor that "frequently weighs heaviest in considering a speedy trial challenge." *Morales v. Keane*, 1995 WL 235222 (E.D.N.Y. April 13, 1995). The Petitioner does not allege nor explain any prejudice to his case, and there is no indication that his defense was impaired due to the delay. Accordingly, the Petitioner's speedy trial claim fails.

### E. As to the *Rosario* claim

The Petitioner argues that the prosecution's failure to disclose *Rosario* material denied him a fair trial.

 *Habeas* relief is available only for claims that the Petitioner's conviction violated Federal constitutional law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). *Rosario* is a New York state evidentiary rule, and the state courts have stressed that the rule is not based on the Federal Constitution. *See People v. Jackson*, 78 N.Y.2d 638, 644, 578 N.Y.S.2d 483, 585 N.E.2d 795 (1991) ("Rosario is not based on the State or Federal Constitution. It is, in essence, a discovery rule...."). Thus, any error under *Rosario* is not reviewable in a *habeas* petition. *See Padro v. Strack*, 169 F.Supp.2d 177, 180–81 (S.D.N.Y.2001) (holding *Rosario* claim not cognizable under federal review); *Williams v. Bennett*,

2001 WL 849746 at *7 (S.D.N.Y. July 27, 2001) ("It is well established that a claim of a *Rosario* violation ... without more, does not present a constitutional issue."); *Bell v. Albaugh*, 2000 WL 1877103 at *6 (S.D.N.Y. Dec.27, 2000) ("*Rosario* claim is 'purely a matter of state law,' and thus not cognizable on federal habeas review.") (quoting *Maddaloni v. Griener*, 1999 U.S. Dist. LEXIS 15686, at *29 (S.D.N.Y. Oct. 7, 1999)). Accordingly, the Petitioner's *Rosario* claim is dismissed.

### F. As to the *Batson* claim

 The Petitioner alleges that the prosecution impermissibly used its peremptory challenges to exclude black members of the jury in violation of his constitutional rights.

 The Supreme Court ruled in *Batson* that the Equal Protection Clause of the Fourteenth Amendment "forbids the prosecutor to challenge potential jurors solely on account of their race." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). To establish a *Batson* violation, a defendant must first make a prima facie showing of intentional discrimination. *Id.* at 96, 106 S.Ct. 1712. A pattern of peremptory strikes against jurors of a particular race is sufficient to raise an inference of impermissible discrimination. *See Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir.2000); *Tankleff v. Senkowski*, 135 F.3d 235, 249 (2d Cir. 1998).

 Once the defendant makes out a prima facie case of racial discrimination, the burden shifts to the prosecution to provide a race-neutral explanation for the peremptory challenges. *Id.* at 97, 106 S.Ct. 1712. The proffer of this reason need not be as detailed or thorough as required to justify a for-cause challenge, however, the prosecutor must "articulate a neutral explanation related to the particu-

lar case to be tried." *Id.* at 98, 106 S.Ct. 1712. After considering the direct and circumstantial evidence, and the prosecutor's neutral explanation for the exercise of particular challenges, the trial court must determine whether the defendant has established purposeful discrimination. *Id.* A trial court's findings, on direct review and especially on *habeas* review, must be given great deference. *Id.* & n. 21.

After a hearing, at which the Petitioner was represented by counsel, the trial court found that the prosecutor had not used his peremptory challenges in a racially motivated manner. The court held

> [o]n the *Batson* issue, both sides were given the opportunity to argue whether, ... the four jurors Fox, Sumpter, Wilson and Mosley, were excluded by the People for racially motivated reasons.

> This Court concludes that the [Petitioner] has not met his burden of proof, and that the People's motivation for the four peremptory strikes was not racially discriminatory. In a trial that otherwise did not raise any racial issues, the People's reasons for exclusion were logical and relevant.

> Mr. Fox's brother had been murdered. Granted, many jurors had family members who were victims of crimes, but the nature of this particular crime offers the reasonable assumption that the juror could be distracted or traumatized. Further, Mr. Fox could have maintained negative feelings for the criminal justice system as a whole because of this unfortunate event.

> The reasons proffered for the exclusion of Ms. Sumpter was likewise not racially motivated. She had been the victim of several crimes but she was not excluded solely on that basis. The prosecutor's good faith in challenging Ms. Sumpter was supported by her failure to report to the police these several crimes, presenting the inference that she may

have failed to do so due to a mistrust of the police department.

> Next, the striking of Mr. Wilson as a juror was well-justified upon two grounds. Not only was he previously prosecuted by the Nassau County District Attorney's Office, but he also exhibited an improper or suspect demeanor in the courtroom. Mr. Wilson's criminal case was ultimately dismissed, but rather than assuming he could be fair to the prosecution, as was claimed by the juror, an equal if not overriding assumption could be that Mr. Wilson would be biased or bitter.

> Finally, the challenge of Ms. Mosley on the basis that she might be distracted because of an up-coming business trip was based on logical, not racial, reasoning. Although some attorneys may have opted to keep Ms. Mosley as a juror and others may have agreed with the prosecutor's explanation, a division of opinion is not determinative under a [*Batson*] analysis.

> The ultimate burden of persuasion that the People's explanation was pretextual is, in this instance, upon the defense.

> Accordingly, this Court is satisfied that, based upon the arguments offered by the People and the defense, the reason for striking the four jurors by the prosecution was not a pretext for racial discrimination.

Order dated December 4, 1996, of Supreme Court, Nassau County (Goodman, J.) at 1–2.

The Petitioner has not offered any evidence to show that the prosecutor's reasons were racially motivated. The Court finds no basis to dispute the trial court's factual findings. Thus, the Petitioner failed to establish purposeful discrimination. Accordingly, this claim is denied.

## G. As to the Jury Instruction

Petitioner claims that the trial court erred in not charging the jury with his requested "prior crimes" instruction, and that the court erred in its Robbery in the Third Degree instruction.

 As the Second Circuit has recently observed:

[I]t is not the province of a federal habeas court to reexamine state-court determinations of state-law questions.... Where an error in a jury instruction is alleged, "it must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." The question is not whether the trial court gave a faulty instruction, but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."... "[I]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instruction to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law."

*Davis v. Strack*, 270 F.3d 111, 123 (2d Cir.2001) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985)).

### (i) Prior Crimes

 The Petitioner argues that because the trial court admitted evidence of his prior crimes, it should have instructed the jury that the evidence could only be considered for a limited purpose. He claims to have suffered prejudice as a result. The following relevant colloquy took place at the charging conference:

The Defendant: We also request that Your Honor give a limited instruction concerning the drugs.

The Court: I don't know what you mean by a limited instruction on the drugs.

The Defendant: When evidence of other crimes is admitted, a proper limited instruction must be given to describe the purpose for which it was received. An instruction that robbery is to permanently deprive and unauthorized use is to temporarily deprive.

The Court: I will not mention anything about drugs. Drugs is an uncharged crime. I won't charge uncharged crimes. I won't even mention the word "drugs." That's for your benefit, Mr. MacKenzie....

Trial Transcript, Feb. 7, 1994, at pp. 1170–71.

"Where the claimed error is not an erroneous jury instruction but the failure to give a requested instruction, the petitioner bears a heavy burden in showing that the trial court's failure to give the instruction to the jury was an error of constitutional magnitude." *Williams v. Bennett*, 2001 WL 849746 at *10 (S.D.N.Y. July 27, 2001) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977))("An omission, or an incomplete instruction, is less likely to be prejudicial than is an actual misstatement of the law.").

The Petitioner has not met this heavy burden. The Petitioner has presented no evidence to support the claim that the lack of instruction was prejudicial, nor has he explained how it violated his constitutional rights. Accordingly, *habeas* relief is denied on this claim.

### (ii) Burden of Proof for Robbery in the Third Degree

 The Petitioner contends that the trial court erred in its Robbery instruction, specifically regarding the burden of proof. During deliberations, the jury asked the court to re-read the elements of Robbery

on two occasions. *See* Trial Transcript, Feb. 7, 1994, at pp. 1221, 1235. After each request, the court read all the elements of the Robbery charge. *See id.* at pp. 1221–40. The Petitioner argues that because the jury requested further explanation, they were confused with regard to the burden of proof. The trial court gave the following instruction on the burden of proof:

As I have said, every defendant in a criminal case is presumed to be innocent until his guilt is proven beyond a reasonable doubt.

And the burden of proving the defendant's guilt always rests with the People. There is no burden upon the defendant to prove anything.

The law accords him the presumption of innocence and requires that you give him the benefit of that presumption throughout the trial until the People have proven his guilt to your satisfaction beyond a reasonable doubt.

Trial Transcript, Feb. 7, 1994, at pp. 1190–01. The court instructed the jury on the burden of proof regarding Robbery as follows:

A person is guilty of robbery in the third degree when he forcibly steals property.

In order for you to find, ladies and gentlemen, the defendant guilty of this crime, the People are required to prove from all the evidence in this case beyond a reasonable doubt each of the following four elements.

*Id.* at pp. 1200–01.

When reviewing a "burden of proof" jury instruction, the Court must determine whether the jury applied a lesser standard of proof than "beyond a reasonable doubt." In making this assessment, the Court "cannot focus exclusively on a few erroneous words in the jury instruction and then reverse the conviction unless it is 'reasonably likely' that the jury

applied the erroneous standard described or implied by those few words." Instead, the Court should "examine the overall charge that the jury heard for a better view of the standard the jury took into its deliberations and applied." *Chalmers v. Mitchell,* 73 F.3d 1262, 1267 (2d Cir.1996) (citing *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975)).

After reviewing the charge, the Court finds that the "burden of proof" instruction did not instruct the jury to apply the standard in a manner which would convict the Petitioner on insufficient proof. In the context of the entire instruction, it is not likely that the jurors misunderstood the burden of proof, especially since the trial court specified that the burden of proof never shifts to the defendant. *See* Trial Transcript, Feb. 7, 1994 at p. 1190. Here, the trial court stated that the defendant is at all times presumed innocent, that the state always has the burden of proof. *See id.* In light of this instruction, the Court finds that it is not "reasonably likely" that the jury misunderstood which party bears the burden of proof. *Beverly v. Walker,* 118 F.3d 900, 903 (2d Cir.1997); *Manning v. Walker,* 2001 WL 25637 at *13–14 (E.D.N.Y. Jan.3, 2001). Accordingly, *habeas* relief on this ground is denied.

**H. As to the Ineffective Assistance of Counsel Claim**

The Petitioner claims he received ineffective assistance of counsel because: (i) appellate counsel failed to allege that he was mentally incapacitated at trial; (ii) appellate counsel allegedly did not want to represent him at a post-trial hearing and failed to adequately argue the speedy trial issue at this hearing. Further, the Petitioner claims that a second appointed counsel provided ineffective assistance in his appeal to the Court of Appeals because

she did not have sufficient knowledge of his case.

In order to prevail on an ineffective assistance of counsel claim, a petitioner must first show that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. This two-prong test applies to the evaluation of appellate counsel as well as trial counsel. *See Clark v. Stinson,* 214 F.3d 315, 318 (2d Cir.2000); *see also Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). The court must, however, "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that the federal district courts need not address both components if a petitioner fails to establish either one. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

■■■ In attempting to demonstrate that appellate counsel's failure to raise a claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. *See Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308,

77 L.Ed.2d 987 (1983). An appellate counsel who files a brief on the merits of a criminal appeal need not raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). A petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. *See Clark,* 214 F.3d at 321; *Mayo,* 13 F.3d at 533.

#### (i) As to the failure to claim mental incapacitation

■■■ The Petitioner asserts that his appellate counsel failed to include a mental incapacitation claim in his appellate brief. As discussed further in this decision, the Petitioner's allegation that he was mentally incapacitated at trial is without merit. Thus, his appellate counsel is not ineffective for failing to include this claim. *See Aparicio v. Artuz,* 269 F.3d 78, 99–100, & n. 10 (2d Cir.2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled.") (quoting *Jameson v. Coughlin,* 22 F.3d 427, 429–30 (2d Cir.1994)). Accordingly, this claim is denied.

#### (ii) As to the post-trial hearing

■■■ The Petitioner alleges that appellate counsel initially refused to represent him at the post-trial hearing, and did only after being "coerced" by the trial court. Further, he argues that counsel did not adequately argue the speedy trial issue at the hearing.

The Petitioner has provided no evidence to support either of these claims, nor has

he demonstrated that he suffered prejudice as a result of appellate counsel's performance. Moreover, this Court found the claims addressed at the hearing, *Batson* and speedy trial, to be without merit. Thus, Petitioner did not suffer prejudice from any alleged deficiencies in appellate counsel's performance at the post-trial hearing. Accordingly, this claim is denied.

### (iii) As to the second appellate counsel

■ The Petitioner claims that second appellate counsel, appointed for the purpose of filing his appeal to the Court of Appeals, was ineffective because she did not know about his case. The Petitioner has pointed to no specific constitutional errors, but alleges that counsel "could never seem to get right: petitioner's last name, his indictment number, his appellate division docket number, nor even his county of conviction." Petitioner's Habeas Corpus Complaint, 99–CV–4659, at p. 56.

The Petitioner has presented no evidence to support these allegations. In fact, his exhibits demonstrate that counsel corresponded with the Petitioner on numerous occasions to inform him that she was appointed as counsel, to inquire about the particulars of his case, whether he wanted to file a supplemental brief, to send him copies of the briefs she drafted, and to inform him of the court's decision on his appeal. Further, the Petitioner included counsel's letter brief to the Court of Appeals which presented factual and legal arguments on three issues, in addition to those raised in the Appellate Division. *See* Petitioner's "Ineffective Assistance of Counsel Exhibits." The Petitioner has not met his burden of demonstrating that counsel's performance was deficient. Moreover, the Petitioner has not shown that he suffered prejudice on his appeal. Accordingly, the Petitioner's ineffective assistance of appellate counsel claim is denied.

### I. As to the Excessive Sentence

The Petitioner claims that his sentence is excessive, based on the trial court's alleged failure to comply with N.Y.Crim. Proc. Law § 400.20, which outlines the procedure for determining whether a defendant should be sentenced as a persistent felony offender.

■ It is well settled that an excessive sentence claim may not be raised as grounds for *habeas* relief if the sentence is within the range prescribed by state law. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *Id.; see also Gonzalez v. Travis,* 172 F.Supp.2d 448 (S.D.N.Y.2001) (finding excessive sentence claim not cognizable for *habeas* review where sentence was within statutory range); *Herrera v. Artuz,* 171 F.Supp.2d 146, 151 (S.D.N.Y. 2001) (holding the trial court's imposition of consecutive sentences was appropriate and did not provide ground for habeas relief); *McCalvin v. Senkowski,* 160 F.Supp.2d 586, 589 ("Sentencing decisions are not cognizable on *habeas* review unless the sentence imposed falls outside the range prescribed by state law."); *Thomas v. Senkowski,* 968 F.Supp. 953, 956–57 (E.D.N.Y.1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law).

Upon his conviction for Kidnapping in the Second Degree, Robbery in the Third Degree, and Unauthorized Use of a Motor Vehicle in the First Degree, the court sentenced the Petitioner, as a persistent felony offender, to four concurrent terms of twenty-five years to life, to run consecutively to a previously imposed three to six year sentence from Queens County. The Petitioner admitted at sentencing that he was a prior felony offender. *See* Sentence

Transcript, March 16, 1994, at pp. 15, 49. Further, the trial court enumerated his reasons for the Petitioner's sentence on the record in accordance with state law. *See id.* at 49–54; *see also* N.Y. Penal Law § 70.10. Moreover, the Petitioner's sentence falls within the range prescribed by state law. *See* N.Y. Penal Law § 70.00(2), (3)(a), 70.10(2), 70.25(2–a). Thus, his claim is not cognizable for federal *habeas* review. Accordingly, this claim is dismissed.

## J. As to the *Brady* claim

The Petitioner claims the prosecution failed to produce, in violation of his *Brady* rights: (i) a statement from Maged Magram, a parking lot attendant for a parking garage located on 42nd Street, between 8th and 9th Avenues, in Manhattan; and (ii) a videotape from the bank ATM machine where the Petitioner withdrew money from Ms. Krajci's account.

To establish a *Brady* violation, the Petitioner must show: (i) that the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (ii) that evidence was suppressed by the State, either wilfully or inadvertently; and (iii) that prejudice ensued. *See Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

### (i) As to the Makram statement

██ The Petitioner claims that Maged Makram gave a statement to a New York City police officer, which provided exculpatory information, and that the prosecution did not disclose it to him. In his petition, he states "Petitioner respectfully submits that any person of reasonable intelligence would infer that the N.Y.C. Police Department took notes of their interview of Mr. Makram." Petitioner's Habeas Corpus Complaint, 99–CV–4659, at p. 68. The Petitioner has presented no evidence that such a statement exists. Mr. Makram tes-

tified that he answered questions posed by police, but he wasn't sure if they wrote it down. *See* Trial Transcript, Feb. 6, 1994, at p. 1091.

Even if the police memorialized Mr. Makram's statement, the Petitioner has not demonstrated that the information was exculpatory. According to the Petitioner, Mr. Makram told the police that he saw the complainant, with a normal demeanor, exit the vehicle and engage in a conversation with the Petitioner. Mr. Makram's testimony in court, however, provided little information. He could not identify the Petitioner as the man who drove the car into his garage, could not remember how many people were in the car, nor could he recall seeing a woman with the man. *See id.* at pp. 1087–99.

Further, the Petitioner has failed to show that the prosecution suppressed the alleged statement, either purposely or otherwise. There is no evidence that a written statement exists. Moreover, the Petitioner has not demonstrated that he suffered prejudice. "The suppression of exculpatory documents does not cause a constitutional violation unless the documents are material, i.e., 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Boyette,* 246 F.3d at 91 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

Even if police recorded Mr. Makram's answers, and the substance of those answers were exactly as the Petitioner alleges, the prosecution set forth ample additional evidence linking Petitioner to the crimes. Thus, the alleged statement would not have undermined the verdict. A trial record must be evaluated in its entirety when assessing alleged omissions of evidence or improper testimony. *See Jones*

*v. Stinson*, 229 F.3d 112, 120 (2d Cir.2000). Accordingly, this Court finds no *Brady* violation occurred regarding the Makram statement.

### (ii) As to the bank videotape

■ The Petitioner alleges that the prosecution withheld a videotape made on August 5, 1992, by the bank where he withdrew money from Ms. Krajci's account. The Petitioner argues that because Detective Kouril obtained a copy of the videotape from the bank, the prosecution had a duty to disclose it. The Petitioner also argues that the tape is exculpatory because it does not show him, Ms. Krajci, or her car, at the ATM machine from approximately 1 p.m. until 2:15 p.m.

There is a question whether the tape is exculpatory. The cameras scanned the ATM machine every minute or so. This does not, however, negate the possibility that the Petitioner arrived at the ATM at another time or location. Thus, the fact that the Petitioner does not appear in the videotape does not mean he did not withdraw money from Ms. Krajci's bank account.

Even assuming that the videotape is exculpatory, the Petitioner has failed to show that the prosecution withheld the video. Although the prosecution has a duty to learn of exculpatory evidence known to persons acting on the government's behalf, *see Strickler*, 527 U.S. at 280–81, 119 S.Ct. 1936, the record does not reflect that the Dimes Savings Bank was in fact acting for the prosecution The tape was made by the Dime Savings Bank in their regular course of business. It was not made by the police department or by Dime Savings Bank acting as an agent on behalf of the police department. The prosecutor told the court that he did not believe the tape was exculpatory and thus not *Brady* material.

In any event, the Petitioner has not demonstrated that prejudice ensued. The trial record indicates that the Petitioner received the videotape during the trial. In fact, the court permitted him to view the tape, outside the presence of the jury, and then play the videotape for the jury. *See* Trial Transcript, Feb. 6, 1994, at pp. 898–932. The Petitioner has not established that he suffered prejudice for the time period he did not possess the videotape. *See Strickler*, 527 U.S. at 281, 119 S.Ct. 1936 (stating "there is never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict"). Accordingly, the Court finds that the Petitioner failed to show a *Brady* violation.

### K. As to the state law claims

The Petitioner claims that, in violation of state law, the trial court erred because it did not apply the "merger doctrine" and did not dismiss the Unauthorized use of a Motor Vehicle charge as a lesser included offense of Robbery.

"A federal court may entertain a state prisoner's habeas corpus petition only to the extent that the petition alleges custody in violation of the Constitution, laws or treaties of the United States." *Beverly*, 899 F.Supp. at 908 (citing 28 U.S.C. § 2254(a)). Thus, federal *habeas* corpus relief is not available for state law errors that do not rise to the level of federal constitutional violations. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *see also Smith v. Phillips*, 455 U.S. 209, 211, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982) (holding that non-constitutional claims are not cognizable in federal *habeas* proceedings).

Here, the Petitioner's claims are based entirely on alleged state law violations. The Petitioner has not alleged, much less proven, that the supposed state law errors violated his federal constitutional rights.

Accordingly, claims (10) and (11) are dismissed.

## L. As to the sufficiency of evidence claim

■■■ The Petitioner argues that the verdict was against the weight of the evidence. Specifically, he asserts that the prosecution did not prove that Ms. Krajci owned the car used to perpetrate the "Unauthorized Use of a Vehicle" charge, or that she owned an ATM card or had a bank account, or that the Petitioner withdrew money from that account.

■■■ A *habeas* petitioner who challenges the sufficiency of the evidence supporting his conviction bears a "very heavy burden." *Jones v. Duncan,* 162 F.Supp.2d 204, 214 (S.D.N.Y.2001). To obtain *habeas* relief, the Court must find that, when viewing the evidence most favorably to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt. *See Farrington v. Senkowski,* 214 F.3d 237, 240–41 (2d Cir.2000) (citing *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■■■ Additionally, the Court must defer to the jury's determination of the weight given to conflicting evidence, witness credibility, and inferences drawn from the evidence. *See Thomas v. Scully,* 854 F.Supp. 944, 954 (E.D.N.Y.1994). A guilty verdict may not be disturbed if the jury has resolved these issues in a reasonable manner. *See id.* The Court's "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (emphasis in original). Further, the jury may base its verdict entirely on circumstantial evidence. *See U.S. v. Russo,* 74 F.3d 1383, 1395 (2d Cir.1996).

■■■ Applying the above standard, the Court finds the evidence sufficiently supports Petitioner's conviction. The state presented ample evidence to support the verdict. Ms. Krajci gave extensive testimony about how the Petitioner abducted her, stole her car, forcibly withdrew money from her bank account, bought drugs with that money, and held her for a substantial period of time under threat of death. Further, the Petitioner's own statements to the police incriminated him in the crimes. The jury chose to believe Ms. Krajci's version of the events over the Petitioner's story. Determinations of credibility are the jury's exclusive responsibility. *See United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993). "Federal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review, this Court must presume that the jury resolved any questions of credibility in favor of the prosecution." *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y. 1996). In view of the record, the Court finds that a reasonable jury could believe such testimony and find it sufficient, along with the ample other evidence, to convict Petitioner of the charged crimes. *See Estrada v. Senkowski,* 1999 WL 1051107 at *14–16 (S.D.N.Y.1999). Accordingly, Petitioner's claim that the evidence did not sufficiently support his conviction is denied.

## M. As to the *Miranda* claim

The Petitioner entitles his next claim "*Miranda*," however, he does not state a *Miranda* violation. He argues that Detective Kouril, the police officer to whom the Petitioner made an incriminating statement, gave false testimony at the preliminary hearing. The Petitioner does not claim that his statement was involuntary or coerced. His petition cites no case law, but refers the Court to a massive "*Mi-*

*randa*" exhibit containing excerpts from the hearing transcripts. Because the Petitioner labels this claim "*Miranda*," the Court will analyze it under the applicable federal constitutional law.

At the hearing, Detective Kouril testified that he read a *Miranda* rights card to the Petitioner upon entering his hospital room. Next, Detective Kouril asked if the Petitioner understood these rights, then asked him to sign the card. The Petitioner ignored Detective Kouril, and refused to sign the rights card. When Detective Kouril told the Petitioner that he would come back, the Petitioner told him, "I took her from Nassau, and the city cops arrested me. So fuck you. You lost." Hearing Transcript, August 12, 1992, at p. 58.

> After the hearing, the trial court found that prior to making such statements [the Petitioner] properly received his Constitutional rights and effectively waived those rights prior to making any statements.
>
> The Court further finds that such statements were voluntary (sic) and not the product of intimidation, coercion or improper police conduct.
>
> As to the statements of [the Petitioner] made to Detective Kouril after Detective Kouril stated "We'll be back for you," this Court finds that the statements made by [the Petitioner] were gratuitous and spontaneous. And when spontaneous statements are made there is no duty on the part of a police officer to restrain a defendant from speaking.
>
> Such statements by [the Petitioner] were made voluntarily of [the Petitioner's] own free will and were not the product of force, promises, undue influence, coercion or subtle maneuvering on the part of Detective Kouril.

*See* Order dated May 26, 1993, of Supreme Court, Nassau County (Goodman, J.) at 5–6.

The "ultimate question of whether a confession was voluntary or involuntary, 'is a legal question requiring independent federal determination.' " *Pou v. Keane*, 977 F.Supp. 577, 583 (N.D.N.Y. 1997) (quoting *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985)); *see also Mincey v. Arizona*, 437 U.S. 385, 396, 98 S.Ct. 2408, 2415, 57 L.Ed.2d 290 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]nstead, the Court is under a duty to make an independent evaluation of the record"). "Subsidiary factual questions underlying a legal determination, however, are entitled to a presumption of correctness under 28 U.S.C. § 2254(d)." *See Vasquez v. Senkowski*, 54 F.Supp.2d 208, 215 (S.D.N.Y. 1999). In determining whether a confession is voluntary, "[t]he test is whether, under the totality of the circumstances surrounding the statements, they were made voluntarily." *Farinaro v. Kirk*, 675 F.Supp. 75, 80 (E.D.N.Y.1987). "In considering [a] claim of coercion, the court must consider 'whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the Petitioner's] will to resist and bring about confessions not freely self-determined.' Among the factors to be considered are the 'type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation." *Cappiello v. Hoke*, 698 F.Supp. 1042, 1056 (E.D.N.Y.1988) (quoting *United States v. Mast*, 735 F.2d 745, 749 (2d Cir.1984)).

After a thorough review of the record, including the minutes of the hearing transcript, the Court concludes that the Petitioner's statement was voluntarily and freely made. There is no indication in the record of physical or psychological coercion. Nor does the record reflect coercive questioning by the detectives. Detective

Kouril's remark that he would return for the Petitioner was not the "functional equivalent" of interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 303, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980) (stating that interrogation consists of comments that are "reasonably likely to elicit an incriminating response"). Further, the Petitioner received his *Miranda* warnings before he made the incriminating statements. *See* Hearing Transcript, August 12, 1992, at pp. 54–56. The record does not indicate that any physical or emotional condition interfered with the Petitioner's ability to comprehend and waive his *Miranda* rights. Thus, the Court concludes that the Petitioner's statement was not the product of coercion, but was freely and voluntarily given.

The Petitioner's contention that Detective Kouril's testimony was "incredible as matter of law" is not supported by the record. While some inconsistencies were pointed out on cross-examination, the substance of Detective Kouril's testimony remained constant throughout the proceedings. The trial court and the jury found Detective Kouril's testimony to be credible, and the Petitioner has not presented any evidence to dispute this finding. Accordingly, this claim is dismissed.

**N. As to the mental incapacitation claim**

▮ The Petitioner argues that he was mentally incapacitated at trial, and the trial court's failure to order a competency hearing *sua sponte* violated his due process rights. Neither the Petitioner nor his legal advisor requested a competency examination or hearing at any time before, during, or after trial. The Petitioner alleges that "an avalanche of evidence" demonstrated his incapacitation, and the trial court should have, of its own volition, ordered a competency exam. *See* Petitioner's Habeas Corpus Complaint, 99–cv–4660, at p. 3.

▮ The Due Process Clause does not require a competency hearing in every instance. *See United States v. Nichols*, 56 F.3d 403, 414 (2d Cir.1995). Absent a reasonable doubt of competency, the trial court need not conduct a hearing. *See Johnson v. Keane*, 974 F.Supp. 225, 230 (S.D.N.Y.1997) (citing *United States v. Kirsh*, 54 F.3d 1062, 1070 (2d Cir.1995)). To determine whether a competency hearing is necessary, the trial court should consider evidence of the defendant's behavior and demeanor, and defense counsel's opinion. *See Drope v. Missouri*, 420 U.S. 162, 180–81, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *see also Nichols*, 56 F.3d at 414.

▮ "With regard to competency claims raised by state prisoners in federal *habeas corpus* petitions, a federal court must presume a state determination of mental competency to be correct unless such determination is not fairly supported by the record." *Sanchez v. Senkowski*, 1996 WL 1057150 at *4 (E.D.N.Y. June 19, 1996) (citing 28 U.S.C. § 2254(d)(8); *Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam)); *see also Johnson*, 974 F.Supp. at 231 ("Upon review, an appellate court owes deference to the trial court's determinations, in recognition of the trial court's superior opportunity to observe 'the defendant during the [pretrial and trial] proceedings.'") (quoting *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986)).

The Court finds that the trial court's failure to hold a competency hearing did not violate the Petitioner's federal constitutional due process rights. There is no indication in the record that such a hearing was warranted, and the Petitioner has failed to present evidence to the contrary. The trial court questioned and observed the Petitioner at a pre-trial proceeding to determine whether the Petitioner would

proceed pro-se. The court found that the Petitioner knowingly and intelligently waived his right to counsel, based on the following colloquy:

The Court: I have to ask you some questions relative to pro se. I would appreciate it if you would answer them as candidly as you can. First, give your name for the record.

The Defendant: Edward McKenzie.

The Court: How old are you?

The Defendant: Thirty-seven.

The Court: What is your educational background?

The Defendant: One semester of college.

The Court: Have you had any experience with the criminal justice system; if so, what is that experience?

The Defendant: Not very much. But since I happen to do a lot of motions on my own, I have been studying on the law.

The Court: You told me it's not very much?

The Defendant: No.

The Court: Are you presently under the influence of alcohol or drugs?

The Defendant: Yes, I am.

The Court: What drugs are you under?

The Defendant: Seconal.

The Court: What is that for?

The Defendant: It's to help me sleep.

The Court: Prescribed by the doctor at the jail?

The Defendant: Prescribed by a psychologist at the jail.

The Court: Have you taken any alcohol or drugs within the last 24 hours?

The Defendant: Yes, I have.

The Court: That's the drug you told me about?

The Defendant: Yes.

The Court: Have you ever been treated for any mental illness or disorder?

The Defendant: Yes, I have.

The Court: When was that?

The Defendant: Presently being treated for that now. That's why I'm being given Seconal.

The Court: Before that, have you ever been in a hospital for any mental illness or disease?

The Defendant: Yes, I was.

The Court: When was that?

The Defendant: Quite some time ago.

The Court: Tell me, give me an idea.

The Defendant: About 16 years ago.

The Court: Do you remember the name of the hospital?:

The Defendant: Meadowbrook Hospital.

The Court: What is the condition of your present physical health?

The Defendant: Right now? Fine.

The Court: Do you understand the dangers and the risks of proceeding pro se?

The Defendant: Yes, I do.

\* \* \* \* \* \*

The Court: Do you think you can control your emotions during a trial?

The Defendant: I will certainly try my best, your Honor.

\* \* \* \* \* \*

The Court: Do you have any doubts about representing yourself?

The Defendant: Yes, I have a bit of doubt representing myself, because I'm a layman in the law. But I'm certainly going to try my best.

The Court: Do you want additional time to consider your application?

The Defendant: No.

The Court: Do you, after I read all this, waive your right to counsel?

The Defendant: Yes.

The Court: I find your request to be unequivocally and timely asserted, and that you knowingly and intelli-

gently waived your right to counsel, and that you wouldn't have engaged in conduct which would prevent a fair and orderly exposition of the issues. You may proceed pro se.

Trial Transcript, June 21, 1993, at pp. 3–9. The Petitioner gave coherent answers to the trial court's questions and gave no indication that he was not fit to proceed. Throughout the course of the trial, the Petitioner gave an opening statement, examined witnesses and made a closing argument without incident or display of irrational behavior. Moreover, none of the Petitioner's legal advisors informed the court that he was mentally incapacitated. The fact that the Petitioner took sleeping pills and had been hospitalized approximately sixteen years earlier for psychological treatment did not provide a compelling basis for the trial court to conduct a competency hearing. The Court concludes that the trial court's failure to hold a competency hearing did not violate the Petitioner's due process rights. Accordingly, this claim is dismissed.

## O. As to the actual innocence claim

The Petitioner alleges that he is innocent and that there is no credible evidence of his guilt. Specifically, he argues that his conviction was obtained through "outrageous abuses of power" such as "tamperings (sic) with physical evidence, felonious perjuries, tamperings (sic) with witnesses, etc." *See* Petitioner's Habeas Corpus Complaint, 99–cv–4661, at p. 11.

 It is well settled that a naked claim of innocence does not provide grounds for federal *habeas* review. "Claims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins,* 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Evidence that merely challenges the jury's finding of

guilt does not rise to such a constitutional level as the federal courts do not exist to correct errors of fact. *See id.* at 400, 113 S.Ct. 853. The Petitioner has not asserted any underlying constitutional ground to support his innocence claim. Thus, his actual innocence claim is not cognizable for federal *habeas* review. Accordingly, this claim is dismissed.

## P. As to the alleged "Prosecution's Numerous Felonious Offenses"

 The Petitioner presents a laundry list of alleged offenses committed by the prosecution. He states that "the prosecution's officials repeatedly violated a wide cross section of New York State's Penal Laws, and thereby, violated Federal Penal Laws (18 U.S.C.) and thereby, produced a conviction that was in violation of Movant's, as it would be of any Citizen's, Constitutional Rights." Petitioner's Habeas Corpus Complaint, 99–cv–4661, at pp. 22–25.

"A federal court may entertain a state prisoner's *habeas* corpus petition only to the extent that the petition alleges custody in violation of the Constitution, laws or treaties of the United States." *Beverly v. Walker,* 899 F.Supp. 900, 908 (N.D.N.Y. 1995) (citing 28 U.S.C. § 2254(a)). Here, the Petitioner's entire argument consists of New York Statute names, section numbers, and definitions allegedly violated by the prosecution. He does not point to any specific misconduct by the prosecutor, nor does he support his claim with any federal constitutional law, other than the title of the United States Code noted above. *See id.* Thus, the Petitioner has not shown a violation of his federal constitutional rights.

Even if the Court interpreted the Petitioner's argument as a prosecutorial misconduct claim grounded in federal constitutional law, the Petitioner has not cited any

specific instances of misconduct for the Court to analyze. *See* Petitioner's Habeas Corpus Complaint, 99–cv–4661, at pp. 22–25. Accordingly, this claim is dismissed.

## Q. As to the alleged unconstitutional laws

The Court interprets the Petitioner's claim as alleging that certain laws are unconstitutional. However, the Court cannot decipher specifically what laws the Petitioner refers to:

> It is Liberty–Dependent and Constitutionally–Mandated that our Jurors must "interpose their common-sense judgment" between any "decisions" made by the prosecution's officials and which abridge or negate the Citizenry's Constitutional Powers in order to "prevent" such very same "oppressions" of unilateral abridgments or negations by corrupt officials. However, there are a select few, and relatively-new laws of the prosecution's (substantive, adjective, or remedial [hereafter: said laws]), and as designated herein below, or their like, whose provisions, singularly or in combinations, now deprive our Jurors' said Right to so "interpose" their "common sense judgments." Said laws are the prosecution's. They are not the Citizenry's. The Citizenry (a/k/a: the People, Society, the Community, the Public), had no direct influence in the final drafts that were passed into laws by the prosecution's legislative officials, nor in the "opinions" of judiciary officials that created "legal precedent." Said laws are virtually unknown to the Citizenry. Thereby, said laws can not (sic) possibly enjoy the Consent of the Governed; are not the Will of the People. Lacking same, said laws are not Constitutional, specifically when they openly or with artifice, abridge the Citizenry's Powers to control and regulate official's powers on a daily basis.

Petitioner's Habeas Corpus Complaint, 99–cv–4661, at pp. 27–28. Absent any reference to specific federal statutes or case law citations, or further explanation, the Court finds that the Petitioner has not stated a viable claim for *habeas* review. Accordingly, this claim is dismissed.

### *CONCLUSION*

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. Pursuant to Fed. R. Spp. Pro. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as the Petitioner has not made a substantial showing of a denial of a constitutional right, in that the issues involved in this case are not debatable among jurists of reason; that a court could not resolve the issues in a different manner; and the questions involved do not deserve encouragement to proceed further. *See Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090; *Lucidore v. New York State Div. Of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

The Clerk of the Court is directed to close these three cases.

**SO ORDERED.**